Ioan P. **SANGEORZAN**, Ana **Sangeorzan**, Agustia **Danciu**, and Valeria **Danciu**

v.

**YANGMING MARINE TRANSPORT CORPORATION.**

Civil Action No. G–96–389.

United States District Court, S.D. Texas, Galveston Division.

Jan. 21, 1997.

Frederick F. Hoelke, Jimmy Dean Johnson, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Ioan P. Sangeorzan, Ana Sangeorzan, Agustia Danciu.

Frederick F. Hoelke, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Valeria Danciu.

Robert L. Klawetter, Eastham Watson Dale & Forney, Houston, TX, for Yangming Marine Tran, Yangming Marine Transport Corporation.

Mark Cohen, Chester J. Makowski, Royston, Rayzor, Vickery & Williams, L.L.P., Houston, TX, for Maersk, Inc., Maersk Lines, Ltd.

## ORDER DENYING MOTION TO DISMISS

KENT, District Judge.

This cause of action was filed on July 12, 1996. Now before the Court is Defendant's Motion to Dismiss on the Grounds of Forum Non Conveniens of October 4, 1996. After careful consideration of all the pleadings and briefs on file in this case, the Court is of the opinion that the Motion should be **DENIED.**

This case arises out of an extraordinary set of facts, which if true, are as nightmarish and shocking as any the Court has seen. On or about March 12, 1996, Defendant's vessel, the M/V Maersk Dubai, a/k/a M/V Med Tai Chung, a/k/a M/V Ming Fortune was en route from Algeciras, Spain to Halifax, Nova Scotia. Two Romanian nationals, Petre Sangeorzan and Radu Danciu, sons of the re-spective Plaintiffs, were stowaways on the vessel. Sangeorzan and Danciu were apparently discovered by the captain or other crew members of the vessel and were expelled from the vessel in the middle of the Atlantic Ocean. Plaintiffs allege that Sangeorzan and Danciu were thrown overboard from the vessel, fell the distance to the surface of the ocean, and were forced to take refuge on two used fuel drums that had been lashed together. Sangeorzan and Danciu allegedly suffered injuries from their fall into the ocean, and once in the ocean, were covered with fuel from the drums when they turned over in the wake of the vessel. Sangeorzan and Danciu were left in the forty-degree water covered with fuel and died. Their bodies were never recovered. Plaintiffs allege that the captain of Defendant's vessel and other crew members directly participated in the events giving rise to this cause of action.

Plaintiffs assert causes of action against Defendant for negligence, willful and wanton misconduct, assault and battery, strict liability, wrongful death under the Death on the High Seas Act, 46 U.S.C.App. § 761 et seq., and damages under general maritime law. Defendant has moved for dismissal on the grounds of forum non conveniens for several reasons. At the present time, the captain and officers of the vessel are under arrest in Canada awaiting the outcome of an extradition proceeding involving Taiwan and Romania. Four Filipino crew members who were witnesses to the underlying events are in Canada seeking political asylum. Other crew members are citizens of Taiwan and the Philippines. Plaintiffs are citizens of Romania, and Defendant's corporate representatives are citizens of Taiwan. In its Motion to Dismiss, Defendant contends that Taiwan is an alternative and more convenient forum in which to try this case.

■■■ The doctrine of forum non conveniens allows a court to decline to exercise jurisdiction where it appears that, for the convenience of the parties and in the interests of justice, the action should be tried in another forum. The ultimate issue in a forum non conveniens analysis is where the case should be tried in order to best serve the convenience of the parties and the inter-

ests of justice. *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986). A forum non conveniens determination is committed to the sound discretion of the trial court and may be reversed only when there has been an abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

■ The first step in a forum non conveniens analysis involves determining whether there exists an available and adequate alternative forum. An alternative forum is available when the entire case and all of the parties can come within the jurisdiction of that forum and is adequate if the parties will be treated fairly and will not be deprived of all remedies. *Syndicate 420*, 796 F.2d at 828–30.

■ If an available and adequate foreign forum exists, the Court must then balance a number of private and public factors to determine whether a forum non conveniens dismissal is warranted. In making this determination, the Court should give great deference to the plaintiff's choice of forum. *Id.* at 830. A foreign plaintiff's choice, however, deserves less deference. *Reyno*, 454 U.S. at 256, 102 S.Ct. at 266.

■ The private factors to be considered in a forum non conveniens analysis relate to the convenience of the parties and include

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The enforceability of a judgment, if one is received, may also be considered. *Id.* The public factors relevant to a forum non conveniens determination relate to the forum's interests and include

the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision.

*Villar v. Crowley Maritime Corp.*, 780 F.Supp. 1467, 1484 (S.D.Tex.1992), *aff'd*, 990 F.2d 1489 (5th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *see also Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843. Determining what location is convenient and whether to dismiss the case involves balancing these private and public factors, none of which is dispositive. *Syndicate 420*, 796 F.2d at 827.

The case at hand is a difficult and complex one because the events giving rise to the various causes of action did not occur in any country. Rather, they occurred on the high seas and involved a number of people of diverse nationalities. For whatever reason, Plaintiffs chose to file their suit in the Galveston Division of the Southern District of Texas. Defendant contends, however, that this Court is an inconvenient forum in which to try the case and requests a dismissal. Defendant asserts that Taiwan is an available and adequate forum and argues that both the private and public factors weigh in favor of dismissing the case from this Court and trying the case in Taiwan. The Court disagrees.

■ The Court finds that the initial showing necessary for a forum non conveniens dismissal, that an available and adequate alternative forum exists, has not been made. While Taiwan as a forum may be technically available in that all parties and the subject matter of the case may be within its jurisdiction, it is neither practically available nor adequate. The Court's concerns about the adequacy and practical availability of the Taiwanese courts centers around the fact that Defendant Yangming Marine Transport is forty-eight percent owned by the Taiwanese government. This fact creates several problems. First, the Court has doubts about the Taiwanese courts' willingness or

ability to allow Plaintiffs to bring suit against Yangming, a government-owned profit-making entity. These doubts seem confirmed by Plaintiffs' counsel's conversations with certain unnamed attorneys in Taiwan, who were of the opinion that Plaintiffs would not be allowed to sue Yangming in Taiwan because of its government affiliation. Even if Plaintiffs were granted permission to sue Defendant, however, they would likely not be able to secure Taiwanese counsel to represent them. Plaintiffs' counsel's discussions with attorneys in Taiwan revealed an unwillingness on the part of Taiwanese attorneys to take on a case against the government-owned Yangming. Thus, Plaintiffs could effectively be deprived of all remedies in the Taiwanese courts by simply being unable to prosecute their suit there.

In addition to procedural difficulties, Plaintiffs would also encounter financial barriers that would preclude them from receiving any judicial relief in Taiwan. Taiwan requires payment of a percentage of the claim as a fee to the court, which ranges from one percent at the trial level to one and a half percent at each of the two appellate levels. Given the facts in this case, the damages sought are likely to be very high, and a payment of even one percent of them would be extremely burdensome on Plaintiffs and would likely preclude them from filing suit. Plaintiffs are currently proceeding pursuant to a contingency fee arrangement with their current attorneys. No such system is available in Taiwan, and Plaintiffs are not able to afford to pay legal fees unless they receive a judgment in their favor. As Defendant points out in its Motion, however, Taiwanese law does provide legal aid for poor litigants. It appears, however, that the merits of the case may be judged before legal aid is even awarded. Article 107 of The Code of Civil Procedure of the Laws of the Republic of China provides: "If a party is devoid of the means to pay the costs of an action, the court shall, when applied for, grant him, by a ruling, procedural relief, unless there is apparently no prospect for him to win the case." The latter part of this provision gravely concerns the Court because Plaintiffs could technically be given an opportunity to sue Defendant in Taiwan, only to have this opportunity

disappear because they cannot afford a private attorney and do not merit, in the strictest sense of the term, a legal aid attorney. Furthermore, Article 108 states that the procedural relief provided for in Article 107 "is granted to an alien on the condition that, according to the treaty or the laws of his own country, a citizen of the Republic of China may enjoy the same privilege in that country." The Court has no idea whether a treaty between China and Romania even exists, or if it does, whether it is reciprocal in the area of legal aid. Additionally, the procedural relief that Plaintiffs might receive even if this provision applies to them may not be sufficient to allow them to prosecute their suit in Taiwan. Article 110 provides that the procedural relief discussed in Article 107 shall consist of temporary relief from the payment of court fees, security, and attorneys' fees for a court-appointed lawyer. A merely temporary respite from the payment of these costs will not benefit the Plaintiffs because if they lose their case, they will have no way to pay these fees. Taiwan operates under a "loser pays" system in which the loser of the suit must pay the costs of the action, so that Plaintiffs would not only be responsible for their own costs but also for the costs of Defendant. The Court views this combination of factors as being a substantial obstacle to Plaintiffs obtaining any relief in the Taiwanese courts.

The Court has concerns beyond the ability of Plaintiffs to get into court in Taiwan. Even if they were procedurally and financially able to sue in Taiwan, Plaintiffs may not be treated fairly simply because of the identity of their adversary. As stated above, Defendant is a business that is almost half-owned by the Taiwanese government. As a business, its purpose is to make money, and the government as partial owner of the business makes money when Yangming makes money. It also loses money when Yangming loses money or is forced to pay out large sums of money pursuant to a judgment against it. The Court means no disrespect to the Taiwanese courts, but it has doubts about the ability of the government courts to fairly and justly decide claims against a government money-making enterprise. By analogy,

no one would want the stockholders of IBM deciding whether IBM is civilly liable and should pay out millions of dollars. Therefore, for the reasons set forth above, the Court finds that Taiwan is not an adequate alternative forum in which to try this case.

 The Court further notes that even if Taiwan were an adequate alternative forum, the private and public factors do not weigh in favor of trying the case in Taiwan. Defendant bears the burden of demonstrating that a forum non conveniens dismissal is warranted, and Defendant has not met that burden in this case. In support of its claims that the private factors weigh in favor of trying the case in Taiwan, Defendant offers several points. Most of the potential witnesses in this case are foreign nationals and are scattered across the globe in various locations. Defendant argues that this fact militates towards trying the case in Taiwan because many of the witnesses will be beyond the subpoena power of this Court, and the Court will be unable to compel their appearance at trial. Their testimony may be obtained through other means, but Defendant argues that these means are expensive and time consuming. Even if the witnesses were willing to testify at trial in this Court, Defendant argues, the cost of obtaining their appearances would be extraordinary because of the number of potential witnesses and the distance that they would have to travel to get to this Court. Defendant argues that the travel burden would be reduced if the case were tried in Taiwan because many of the potential witnesses are of Taiwanese and Philippine descent. Moreover, Defendant contends that it is likely that the accused captain and crew members will be returned to Taiwan from their custody in Canada. Defendant further argues that if the case is tried in this Court, the parties will have to rely heavily on deposition testimony, and the Court would not be able to adequately assess the credibility of the witnesses through deposition testimony. Finally, Defendant argues that because English is not the native language of the captain and other crew members, translators would be needed to interpret the testimony of these crucial witnesses. Defendant contends that the use of a translator will hamper the Court's ability to assess the credibility of these witnesses and will increase the cost and length of the trial.

Defendant has presented a compelling argument that the private factors weigh in favor of trying the case in Taiwan, but the Court finds that many of the difficulties that may arise by trying the case in this Court will also be present if the case is tried in Taiwan. For instance, the Taiwanese court would also have difficulty compelling some witnesses to appear at trial. A Taiwanese court may compel the appearance of unwilling witnesses who are residents or citizens of Taiwan, but many of the potential witnesses in this case are not residents or citizens of Taiwan. Moreover, many of the Taiwanese witnesses that this Court would not have subpoena power over are employees of Defendant, and Defendant could make them available for trial here.

 As to Defendant's claim that it will be expensive to obtain the appearances of witnesses and parties if the suit is tried in this Court, the Court finds that the same will be true in Taiwan. If the case is tried in Taiwan, the witnesses seeking asylum and the accused crew members who are in Canada will have to travel a farther distance to Taiwan than if the case were tried in this Court. The Court has not been presented with any evidence to indicate that the captain and other crew members in custody in Canada will soon be returned to Taiwan. As to the Filipino witnesses, the Court recognizes that the Philippines is closer to Taiwan than to this Court, but it is not clear whether the Filipino witnesses who may be called to testify actually reside full-time in the Philippines. It may be that the Filipino crew members reside elsewhere or that they may be on a ship or in port, perhaps in the very District encompassing this Court, at the time their testimony will be needed. The key Filipino witnesses are currently in Canada seeking asylum and may well remain there through the time of trial. In that case, they will be much closer to this Court than to Taiwan. For these reasons, the Court finds Defendant's arguments regarding the expense and inconvenience of travel to this Court unconvincing. Because of the nature of this case,

it case will be expensive and riddled with inconveniences wherever it is tried. While this fact may be unfortunate for Defendant in this case, the doctrine of forum non conveniens should not be invoked simply to shift the inconvenience from one party to the other.

The Court finds Defendant's arguments regarding the use of deposition testimony and translators equally unconvincing because the same problems will be present if the case is tried in Taiwan. If the case proceeds in Taiwan, it is likely that both parties will have to rely on deposition testimony, and the Taiwanese court will face the same issue of evaluating credibility from a deposition that this Court would face if it were presented with deposition testimony. Moreover, this Court encourages and frequently relies on deposition testimony and is confident that it can fairly evaluate credibility the same way it does in all other cases involving deposition testimony. Similarly, the Court often relies on translators to present the testimony of witnesses or parties whose native language is not English and is confident in its ability to properly assess the credibility of testimony presented through a translator in this case. Moreover, the Court notes that Plaintiffs in this case, along with many witnesses, are not native Chinese speakers, and would require a translator if the case proceeded in Taiwan. Thus, the Taiwanese court would face the same problems that this Court would face regarding the use of translators, and the Plaintiffs would be saddled with the burden of presenting their case through a translator. The Court reiterates that a forum non conveniens motion is not to be used simply as a vehicle to shift the burdens and inconveniences to the other side. The Court finds that Defendant has failed to show that the private factors weigh in favor of trying the case in Taiwan and that granting a forum non conveniens dismissal will do any more than simply shift inconveniences.

■ The Court likewise finds that the public factors do not weigh in favor of a forum non conveniens dismissal. Defendant argues that there is no local interest in the Southern District of Texas in this case because the activities forming the basis of this suit occurred outside the United States. By the same argument, there should be no local interest in this case in Taiwan because the underlying events occurred on the high seas. It could be argued, however, that Taiwan does have an interest in this case because of the nationalities of Defendant and those crew members who allegedly participated in the events giving rise to this action. It could also be argued that this Court has an interest in this case because Defendant's ships frequently visit and dock in the ports in the Southern District of Texas, and have for many years, and the Court feels a duty to ensure that such ships are properly operated and that their crew members do not engage in atrocities while in port or after they leave the District. Defendant further argues that trying this case in this Court would place a burden on the Court's docket and personnel and would frustrate local litigants who wish to have their case heard in this Court. The Court appreciates Defendant's concerns about the obligations of this Court because it does have one of the largest dockets in the nation. Despite this fact, however, the Court is current on all docket obligations and last year closed almost 800 cases, over two times the national average for Federal District Courts. Therefore, this case would not impose a burden on the Court, nor would it interfere with the rights of local litigants to try their cases here.

■ Finally, Defendant argues that Taiwanese law governs this action and that this factor militates towards trying the case in Taiwan. The Court has not yet determined what law governs this action and is not obligated to make such a determination prior to ruling on a forum non conveniens motion. *Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1378 (5th Cir.1988) (citing *Piper,* 454 U.S. at 249–52, 102 S.Ct. at 262–65). Even if Taiwanese law governs this dispute, this fact alone does not outweigh the other factors, which support keeping the case in this Court. Moreover, the Court is confident of its ability to properly apply whatever law is determined to be governing. The Court grants the parties forty-five (45) days from the date of this Order to file motions regarding what law governs this dispute.

Responses to such motions shall be due twenty (20) days after the motions are filed, and no replies will be permitted or required.

After a careful consideration of all the factors relevant to a forum non conveniens analysis, the Court concludes that, in order to best serve the convenience of the parties and the interests of justice, Plaintiffs' action should not be dismissed. The Court is not persuaded that Taiwan is an adequate alternative forum or that trying the case in Taiwan would further any public or private interests. While a foreign plaintiff's choice of forum is entitled to less deference than that of a resident plaintiff, it is not entitled to no deference. Therefore, the Court declines to disturb Plaintiffs' choice of forum and dismiss their action.

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss on the Grounds of Forum Non Conveniens is **DENIED.** The case remains pending in this Court. The parties are **ORDERED** to file motions regarding applicable law within forty-five (45) days of the date of this Order. Responses shall be due within twenty (20) days of the date such motions are filed, and replies are neither required nor permitted. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**