Frane **SABLIC,**

v.

**ARMADA SHIPPING APS, Panam Trinity Shipping, S.A., and Pan American Traders.**

Civil Action No. G–96–197.

United States District Court,
S.D. Texas.
Galveston Division.

July 29, 1997.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, David W. Robertson, Univ. of Tx. School of Law, Austin, TX, for Plaintiff.

Jad J. Stepp, Jerry C. von Sternberg, Kleberg Law Firm, Houston, TX, for Defendants.

## *ORDER*

KENT, District Judge.

This case arises out of an injury sustained by a Croatian seaman when he was offloading cargo from the vessel to which he was assigned. Now before the Court is Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens, or In the Alternative, Motion to Enforce Venue Selection and Choice of Law Clauses of the Seaman's Employment Contract and to Apply Croatian Law of April 7, 1997. For the reasons set forth below, the Motion to Dismiss on the Grounds of Forum Non Conveniens is **DENIED**, and the Motion to Enforce Venue Selection and Choice of Law Clauses and to Apply Croatian Law is **DENIED**.

Plaintiff is a Croatian citizen who was a crewmember aboard the M/T PANAM TRINITY in January, 1994 when, while offloading a cargo of caustic soda in Buenaventura, Colombia, he was sprayed in the face with the soda. The PANAM TRINITY is a Panamanian-flagged vessel, and at the time of the accident, was owned by Defendant Panam Trinity Shipping, S.A., a Panamanian corporation. Defendant Armada Shipping, apparently a Danish corporation,[1] was the operator of the vessel, and Panamerican Tankers, Inc., a Liberian corporation, was the time-charterer.[2] Defendant Parcel Tankers Services, Inc., a Connecticut corporation, was acting as the agent for the time charterer.

Plaintiff began his career as a seaman in November, 1992, when he joined the PANAM TRINITY in Philadelphia. His initial

---

**1.** Although in one contract, it is referred to as a corporation organized under the laws of Switzerland.

**2.** Plaintiff claims that the time charterer of the vessel, Panamerican Tankers, is not a defendant herein, although a Pan American Traders is listed as a defendant in the First Amended Complaint.

stint on the PANAM TRINITY lasted eight months, during which time the vessel sailed a number of times to and from Texas ports. Plaintiff left the vessel in July, 1993 in Houston, Texas. Plaintiff then rejoined the vessel in September, 1993 in Astano, Spain. At this time, he signed a Seaman's Employment Contract with Marinconsult, a crewing agency, which stated that the current Seafarers' and Dockers' Union of Croatia ("SDUC") Collective Agreement would be incorporated into and form part of the contract. The SDUC Collective Agreement is a agreement between Marinconsult and the SDUC that sets forth the rights and liabilities of seaman serving on board ships owned, operated, or managed by Marinconsult. The Collective Agreement provides that "[i]n settlement of disputes the parties to the Contract agree to apply the Croatian legislation and the Conventions referred to in this Contract. Possible disputes arrising [sic] this Contract shall be brought for judicial resolution with a relevant court in Rijeka." (SDUC Collective Agreement, p. 9). At the time Plaintiff signed his employment contract with Marinconsult, he was not a member of the SDUC. Nor is there any evidence that Plaintiff was presented with a copy of the Collective Agreement at the time he signed the contract.

Immediately prior to Plaintiff's injury in Colombia, the PANAM TRINITY made stops in Houston, Texas City, and Freeport, Texas. The caustic soda that injured Plaintiff was loaded onto the vessel in Freeport. The vessel then departed on a direct voyage to Buenaventura, Colombia, where Plaintiff was injured offloading the soda. After his injury, Plaintiff first received medical treatment in Buenaventura. After two days in the hospital there, he was transferred to a hospital in Bogata. Plaintiff then went to Graz, Austria to consult with a specialist, who subsequently referred him to a clinic in Aechen, Germany that is purportedly the premier eye hospital in Europe. After Plaintiff finished his treatment at the Aechen clinic, Plaintiff returned to Split, Croatia, where he was monitored by a local physician. Eigh-

teen months after the date of the accident, Plaintiff requested to be sent to Houston to consult with Dr. Goosey at the Houston Eye Associates.[3] Marinconsult arranged for Plaintiff to obtain a medical waiver for a visa and paid for Plaintiff to travel to Houston to see Dr. Goosey. Marinconsult provided for Plaintiff's stay at a full-care apartment complex adjacent to the Houston Eye Associates and also paid for Plaintiff's mother to travel to Houston, where she resided in the apartment with Plaintiff and cared for him. Plaintiff and his mother remain residents of Houston.

As a result of his injury, Plaintiff filed suit against Defendants Armada Shipping, Pan Am Trinity Shipping, and Parcel Tankers Service, Inc. Marinconsult is not a Defendant herein. Defendants filed a Motion to Dismiss on the Grounds of Forum Non Conveniens, seeking a dismissal of the case on the basis that it would be more convenient to try the case in Croatia. In the alternative, Defendants seek an enforcement of the venue selection clause in the SDUC Collective Agreement and move for the application of Croatian law if this Court retains jurisdiction over the case. The Court first addresses itself to the Motion to Dismiss on the Grounds of Forum Non Conveniens.

The doctrine of forum non conveniens allows a court to decline to exercise jurisdiction where it appears that, for the convenience of the parties and in the interests of justice, the action should be tried in another forum. The ultimate issue in a forum non conveniens analysis is where the case should be tried in order to best serve the convenience of the parties and the interests of justice. *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986). A forum non conveniens determination is committed to the sound discretion of the trial court and may be reversed only when there has been an abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

---

**3.** Plaintiff apparently learned of Dr. Goosey from another Croatian seaman who had been treated by Dr. Goosey.

257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

The first step in a forum non conveniens analysis involves determining whether there exists an available and adequate alternative forum. An alternative forum is available when the entire case and all of the parties can come within the jurisdiction of that forum and is adequate if the parties will be treated fairly and will not be deprived of all remedies. *Syndicate 420,* 796 F.2d at 828–30.

If an available and adequate foreign forum exists, the Court must then balance a number of private and public factors to determine whether a forum non conveniens dismissal is warranted. In making this determination, the Court should give great deference to the plaintiff's choice of forum. *Id.* at 830. A foreign plaintiff's choice, however, deserves less deference. *Reyno,* 454 U.S. at 256, 102 S.Ct. at 266.

■ The private factors to be considered in a forum non conveniens analysis relate to the convenience of the parties and include

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The enforceability of a judgment, if one is received, may also be considered. *Id.* The public factors relevant to a forum non conveniens determination relate to the forum's interests and include

the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision.

*Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1484 (S.D.Tex.1992), *aff'd,* 990

F.2d 1489 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *see also Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843. Determining what location is convenient and whether to dismiss the case involves balancing these private and public factors, none of which is dispositive. *Syndicate 420,* 796 F.2d at 827.

The case at hand presents an interesting and difficult question regarding whether to dismiss on forum non conveniens grounds because the event giving rise to the cause of action occurred in a foreign country to a Plaintiff from another foreign country aboard a vessel owned and operated by parties from yet still other foreign countries that had just picked up cargo in the United States. Given these facts, it is difficult to say that any one forum would be convenient to all parties and participants. Defendants, however, argue that Croatia is a convenient forum in which to try the suit. They assert that Croatia is an available and adequate alternative forum and that the private and public factors weigh in favor of trying the case in Croatia. For the reasons set forth below, the Court disagrees.

■ In the first instance, the Court finds that Croatia, while it may be an available forum, is not an adequate forum in which Plaintiff may present his case. The Court bases this finding in large part on the political and military instability of the region. Croatia is a war-torn country that, while making great strides towards recovery, is simply too unstable for this Court to find it to be an adequate forum for Plaintiff's suit. While it is possible for Plaintiff's case to be heard in the Croatian courts, there is likely a backlog of cases that could present a significant delay in the resolution of Plaintiff's case. The Court finds that the possibility of a lengthy delay may be considered in this analysis because justice delayed is often justice denied. Therefore, the Court finds that Croatia is not an adequate alternative forum.

■ Even if the Court were to find Croatia to be an adequate and available alternative forum, Defendants' motion for a forum non conveniens dismissal would still fail because the private and public factors do not

weigh in favor of trying the case in Croatia. Defendants argue that the private factors militate toward trying the case in Croatia because of the practical difficulties, burdens, and expense of trying the case in this Court. Defendants contend that if the case is tried in this Court, it would be difficult to obtain access to sources of proof, the Court would be unable to compel the attendance of a number of foreign witnesses, and the expense and burden of bringing witnesses to this Court would be prohibitive. The Court recognizes that a number of potential witnesses are present in this case, most of whom are citizens of foreign nations. The Court finds, however, that many of these witnesses are unnecessary to the trial of this case and would likely not be called to testify in any forum. Not every physician who treated Plaintiff throughout his ordeal needs to testify. If some of their testimony is essential and they cannot attend the trial, their testimony may be presented by deposition. Moreover, not every member of the crew of the vessel, all of whom are Croatian, needs to testify. In this Court's opinion, the essential witnesses in this case are Plaintiff, his mother, his current treating physician, any witnesses to the accident, and the Captain or Chief Mate of the vessel. Plaintiff, his mother, and Plaintiff's current treating physician are all residents of Houston. Plaintiff referred to two seaman who were on deck at the time of his accident, both of whom are Croatian and no longer work for Defendant, but it appears that neither of them actually witnessed the accident. Thus, it is not clear that these seaman would be called to testify. Moreover, while they are citizens of Croatia, their residences are not mentioned, and because they are seaman, they may likely be at sea more than they are in Croatia or any other country of residence. Similarly, the Captain and Chief Mate are Croatian but both are still employed by Defendant, who can easily make them available for trial, especially given the fact that the vessel at issue regularly travels to ports within this Court's District.

The Court acknowledges Defendants' argument that a trial of the case in this Court could be expensive and burdensome but finds the same would be true if the case were tried in Croatia. Defendants argue that translators will be needed if the case is tried here because many of the witnesses are Croatian and some of the documents are written in the Croatian language. This argument holds little weight for the Court because translators would likely be needed for some witnesses if the case were tried in Croatia. Moreover, this Court regularly relies on interpreters in routine proceedings and is confident in its ability to handle interpreted testimony and documents. Defendants also argue that the cost of transportation and lodging of witnesses would be overly burdensome if the case is tried in this Court. The Court also finds this argument to be of little moment because witnesses would also have to be transported and lodged in Croatia, some of whom would be traveling farther to go to Croatia than to come to this Court. The Court notes that while the crew of the vessel is all Croatian, the vessel does not appear to travel to Croatia. Rather, it seems to have a regular route between Texas ports and Latin America and South America, making it more convenient for potential witnesses aboard the vessel to travel to this Court than to Croatia. The Court further notes that one potential witness, the vessel's agent, resides in Missouri City, Texas, which is located within this Court's district. It appears then that it would not be more convenient for any of the parties or witnesses to try this case in Croatia, except for the two potential liability witnesses who are Croatian citizens but whose exact whereabouts are unknown or unstated. The Court notes that a trial of this case is firmly set for September 8, 1997, just over a month away. A forum non conveniens dismissal at this juncture would bring cause a severe delay in the case on the eve of the resolution of it, which would likely be compounded by delays in the court system in Croatia. Therefore, for the reasons stated above, the Court finds that the private factors do not weigh in favor of trying the case in Croatia.

The Court likewise finds that the public factors do not weigh in favor of trying the case in Croatia. As to the first public factor, the Court acknowledges that this case may present some administrative difficulties be-

750

cause of the necessity of foreign witnesses and interpreters. These difficulties, however, are not overwhelming. Nor will this case congest the court's docket or interfere with its ability to resolve disputes involving citizens of this Court's Division. The Court notes that while it does have an extremely large civil docket, it is current on its docket obligations. The Court further notes the fact that this case has a firm trial setting just over a month away from the date of this Order, and the case will be reached at that time. The second public factor, that regarding the imposition of jury duty on the residents of this Division, has no relevance in this case because it is a nonjury case. As to the third factor, the Court recognizes that Croatia may have a local interest in this controversy because Plaintiff is a Croatian allegedly injured by Defendants who recruit Croatians to work as seamen aboard their vessels and who may not be providing them a safe place to work. The Court also finds that Texas, and this Court particularly, has an interest in this controversy because the vessel alleged to be unseaworthy regularly stops at ports in the Southern District of Texas and loads and unloads cargo. In fact the very cargo that injured Plaintiff was loaded onto the vessel in Freeport, which is in this Court's Division. The Court takes great interest in this fact and would find it disturbing if Defendants are bringing unseaworthy vessels to ports within this Court's Division. Thus, the Court finds that local interests and concerns are implicated by this case. Finally, the Court finds that the fourth factor, regarding applicable law, does not weigh in favor of trying the case in Croatia because the Court will apply United States law to the case.

█ The Court finds United States law applicable to the case for several reasons. First, the Court declines to enforce the choice-of-law clause in the SDUC Collective Agreement that calls for the application of Croatian law. The choice-of-law clause appears to apply to disputes arising under the contract, for the settlement of which the parties, Marinconsult and the SDUC, agree to apply Croatian law. The Court finds that the controversy at hand does not arise under the contract because it concerns a personal injury tort brought by a seaman against the owners and operators of a vessel. The parties to the Collective Agreement, who agreed to apply Croatian law in disputes between them, are not even parties to this litigation; Plaintiff is not suing Marinconsult or the SDUC. Moreover, while Plaintiff's seaman's employment contract incorporated the Collective Agreement by reference, Plaintiff was not presented with a copy of the Collective Agreement at the time he signed his employment contract. Nor is it clear that Plaintiff could read English, the language in which the seaman's employment contract was written, when he signed the contract. Moreover, Plaintiff was not a member of the union that entered into the Collective Agreement that specified that Croatian law should govern any disputes between the union and Marinconsult. The Court is reluctant to enforce a choice-of-law clause given these circumstances, and this reluctance is compounded by the fact that there traditionally is an inequality in bargaining power between seamen and their employers, which is certainly evidenced in this case. For these reasons, the Court finds the choice-of-law clause in the Collective Agreement inapplicable to this case, and for the same reasons, will not apply the venue selection clause in the Collective Agreement. Therefore, Defendants' Motion to Enforce Venue Selection and Choice of Law Clauses is **DENIED.**

Having found the choice-of-law clause unenforceable, the Court now turns to a traditional choice-of-law analysis for maritime cases. In determining what law applies, the Court must evaluate eight factors, which are: 1) the place of the wrongful act; 2) the law of the flag; 3) the allegiance or domicile of the injured seaman; 4) the allegiance of the defendant shipowner; 5) the place where the contract of employment was made; 6) the inaccessibility of a foreign forum; 7) the law of the forum; and 8) the shipowner's base of operations. *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970).

In the case at hand, Colombia was the place of the wrongful act. This factor, however, carries little weight in cases involving shipboard torts "because of the varieties of

legal authority over waters [a vessel] may navigate." *Lauritzen v. Larsen,* 345 U.S. 571, 583, 73 S.Ct. 921, 929, 97 L.Ed. 1254 (1953). The second factor is the law of the flag, and in this case, the vessel flew the flag of Panama. The law of the flag has historically been of "cardinal importance" in determining applicable law in maritime cases. *Id.* at 584, 73 S.Ct. at 929; *Coats v. Penrod Drilling Corp.,* 61 F.3d 1113, 1120 (5th Cir. 1995). Thus, this factor weighs heavily in favor of applying Panamanian law. As to the third factor, Plaintiff is a Croatian citizen who resides in Houston and has for several years due to his medical treatment. Plaintiff has expressed an intent to remain in the United States and seek citizenship along with his mother. This factor points toward the application of Croatian or United States law.

Numerous Defendants are present in this case, all of whom have different allegiances. Defendant Panam Trinity Shipping, the shipowner, is a Panamanian corporation. Defendant Armada Shipping Aps., the operator of the vessel, is a Danish corporation. Defendant Parcel Tankers Service, Inc., the agent for the time charterer, is a United States corporation. Thus, the factor of the allegiance of the defendants points in many directions, unless the Court focuses solely on the shipowner, in which case it would indicate that Panamanian law applied.

The fifth factor is the place of the contract, which in this case is Spain. Plaintiff signed his seaman's employment contract and joined the vessel in Astano, Spain. The sixth factor regarding the inaccessibility of the forum is only relevant to a forum non conveniens determination. *Coats,* 61 F.3d at 1120 (citing *Lauritzen,* 345 U.S. at 589–90, 73 S.Ct. at 931–32). Therefore, the Court will not consider this factor in making its choice-of-law analysis. The seventh factor, the law of the forum, is relevant, and in this case is the law of the United States.

The eighth and final factor is the defendant shipowner's base of operations, which involves a somewhat complex analysis of the vessel's activities and who controls it. In order to determine a vessel's base of operations for choice-of-law purposes, the court must "look to the location from which its day-to-day operations are controlled." *Fogleman v. ARAMCO,* 920 F.2d 278, 284 (5th Cir.1991) (citations omitted). As stated above, the PANAM TRINITY is owned by a Panamanian corporation, Panam Trinity Shipping, and operated by a Danish corporation, Armada Shipping. At the time of the accident, the vessel was under a long-term charter to a Liberian corporation, Panamerican Tankers,[4] and an American corporation, Parcel Tanker Services, was the sole and exclusive chartering agent for the time charterer. Pursuant to an agency agreement entered into with Armada Shipping acting on behalf of Panamerican Tankers, Parcel Tankers Services had the power to make, sign, and execute agreements for the time chartering of ships, the subchartering of time-chartered ships, freight contracts, and transport contracts. Parcel Tankers Services also had the authority "to attend to and deal with the loading and discharging and bunkering of any ship and the Insurance, repairs and surveys thereof." (Agency Agreement, p. 1). Parcel Tankers Services could also collect on behalf of Panamerican Tankers all freights, demurrages, charter hires and other moneys due Panamerican Tankers and deposit these into accounts designated by Armada Shipping.

Defendants contend that Armada Shipping handled the day-to-day operations of the vessel at the time of Plaintiff's injury and therefore that the base of operations of the vessel is Denmark. Plaintiff contends that Parcel Tanker Services, which is based in Connecticut, controlled the day-to-day operations of the PANAM TRINITY, and that the United States was the vessel's base of operations. The Court agrees with Plaintiff and finds that the evidence demonstrates that the day-to-day activities of the vessel were controlled by Parcel Tankers Services, an American corporation. Therefore, the vessel's base of operations at the time of the accident was the United States. This finding is bolstered by the fact that the PANAM TRINITY regularly travels to United States ports, a high

4. The PANAM TRINITY appears to be only one of more than twenty vessels time chartered to Panamerican Tankers and managed by Parcel Tankers Services.

percentage of which are in this Court's District. In fact, the vessel appears to have a fairly regular route in which it leaves from Houston, travels to ports in the Caribbean and South America, and returns to Houston. For these reasons, the Court finds that the final factor in the choice-of-law analysis points to the application of United States law.

 Considering these factors and weighing them in light of the precise circumstances of this case, the Court finds that United States law should apply to this case. The Court notes at the outset of this finding that the parties in this case argued only for the application of United States law or Croatian law; no party urged the application of the law of any other country, despite the fact that several of the factors point toward the application of other law. Because the parties do not urge the application of law other than that of the United States or Croatia, the Court confines itself to choosing between these two options. *See Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929 (finding that although Cuba was the place of injury, it need not decide whether Cuban law was applicable because "neither party urges Cuban law as controlling"); *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 723 (5th Cir.1990) (confining its inquiry to whether United States or Philippines law applied despite the presence of factors indicating that Liberian or Norwegian might apply), *cert. denied*, 499 U.S. 925, 111 S.Ct. 1322, 113 L.Ed.2d 255 (1991). The only factor that supports the application of Croatian law is the citizenship of Plaintiff. The Court finds this one fact, that Plaintiff is a Croatian citizen not even currently residing in Croatia, is insufficient to support the application of Croatian law. Moreover, several factors support the application of United States law, such as the fact that it is the law of the forum, it is the law of the location of the vessel's base of operations, and it is the law of the residence of Plaintiff. It is also the law under which one of the Defendants, Parcel Tanker Services, was organized and operates. It is for these reasons that the Court finds that United States law will apply to this case.

For the reasons set forth above, Defendants' Motion to Dismiss on the Grounds of Forum Non Conveniens is **DENIED**. The Court likewise **DENIES** Defendants' Motion to Enforce Venue Selection and Choice of Law Clauses and to Apply Croatian Law. The Court will apply United States law in the resolution of this case. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are instructed to file nothing further on these issues in this Court, including motions to reconsider and the like unless compelling evidence warrants such a reconsideration. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**