**Angel Adrian GONZALES and Gina Corrales De Gonzales Plaintiffs,**

v.

**P.T. PELANGI NIAGRA MITRA INT'L, P.T. Wirazee Adhi Engineering, Maxus Energy Corp. and YPF Maxus Southeast Sumatra B.V. Defendants.**

**No. CIV.A. G–01–628.**

United States District Court, S.D. Texas, Galveston Division.

April 18, 2002.

Richard Martin Schechter, Attorney at Law, Houston, for Angel Adrian Gonzalez, Gina Corrales de Gonzalez, plaintiffs.

Francis I Spagnoletti, Spagnoletti & Assoc, Steven Lynn Roberts, Fulbright & Jaworski, Houston, for P.T. Pelangi Niaga Mitra, Intl., P.T. Wirazee Adhi Engineering, Maxus Energy Corp, Maxus Southeast Sumatra Inc, YPF Maxus Southeast Sumatra B.V., defendants.

## ORDER GRANTING DEFENDANTS P.T PELANGI NIGRA MITRA, INT'L, MAXUS ENERGY CORP. and YPF MAXUS SOUTHEAST SUMATRA B.V.'s MOTION TO DISMISS FOR FORUM NON CONVIENENS and DENYING DEFENDANT P.T PELANGI NIGRA MITRA, INT'L's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS MOOT

KENT, District Judge.

This is a personal injury lawsuit filed by two Ecuadorian citizens, Angel Adrian Gonzales and Gina Corrales De Gonzales, against P.T. Pelangi Niagra Mitra International ("Pelangi"), P.T. Wirazee Adhi Engineering ("Wirazee") and YPF Maxus Southeast Sumatra B.V. ("YPF Maxus") and Maxus Energy Corporation ("Maxus Energy"). Pelangi and Wirazee are Indonesian entities based in Indonesia. YPF Maxus, a Dutch oil company, is also based in Indonesia. The sole American Party to this action, Maxus Energy, is an oil company headquartered in Texas. Now before the Court is a Motion to Dismiss for Forum Non Conveniens, filed by Maxus Energy and YPF Maxus, and a Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, for Forum Non Conveniens, filed by Pelangi. For the reasons

articulated below, Maxus Energy, YPF Maxus and Pelangi's Motions to Dismiss for Forum Non Conveniens are hereby **GRANTED** and Pelangi's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED** as moot.

## I.

This lawsuit arises from the following undisputed facts. On February 21, 2000, Plaintiff Angel Adrian Gonzales ("Gonzales") was working offshore of Indonesia in the Widuri oil field aboard the PELANGI CHARLIE, a barge owned and operated by Pelangi.[1] On that same day, Gonzales and three other individuals attempted to transfer from the PELANGI CHARLIE to an adjoining tanker for lunch via a personnel basket that was to be lifted by a crawler crane.[2] During the transfer, the basket became unstable and all four occupants fell towards the vessel. Although two of the individuals landed safely on the vessel, Gonzales and the fourth occupant fell into the sea.[3] Consequently, Gonzales suffered serious head and back injuries. Gonzales spent one night at an Indonesian medical facility before he was flown to Singapore for additional medical care. After one year of hospitalization in Singapore, Gonzales traveled to Houston, Texas to undergo physical and occupational therapy at The Institute for Rehabilitation & Research ("TIRR"). Gonzales, now a quadriplegic, currently resides in Houston and continues to receive therapy at TIRR. Gonzales intends to eventually return to Ecuador.

## II.

The doctrine of forum non conveniens derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S.Ct. 1712, 1724, 135 L.Ed.2d 1 (1996). Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir.2001).

Federal courts employ a two-part analysis when applying the forum non conveniens doctrine in the international context. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). The first step involves a determination of whether an adequate and available foreign forum exists. *See Sydow v. Acheson & Co.*, 81 F.Supp.2d 758, 768 (S.D.Tex.2000). Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).[4] If the relevant private interest factors advocate dismissal, however, no in-

---

1. At this early stage in the litigation, it remains unclear whether Plaintiff was employed by Wirazee or YPF Maxus. At the time in question, Wirazee was providing engineering contract services to YPF Maxus.

2. Two of the individuals in the personnel basket (Karno and Sustrino) were employed by Gemilang, an Indonesian company and non-party to this action. The third individual (Biantoro) worked for YPF Maxus.

3. Karno and Sustrino landed safely. Biantoro was killed as a result of the fall.

4. The private factors to be considered in a forum non conveniens analysis relate to the convenience of the parties, and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and cost of obtaining attendance of willing, witnesses; possibility of viewing the premises, if such viewing would be appropriate to the action; all other practical problems that make a trial of a case easy,

quiry into the public interest factors is needed. See *Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550–51 (5th Cir.1991). While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. at 266; *see also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co. .*, 796 F.2d 821, 827 (5th Cir.1986).

## III.

■ An alternative forum is "available" to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred. *See Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (citation omitted) ("Ordinarily, [the requirement of an alternative forum] will be satisfied when the defendant is 'amenable to process' in the other jurisdiction"). An agreement by the defendants to submit to the jurisdiction of the foreign forum satisfies this requirement. *See Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534, 539 (S.D.N.Y.2001); *see also In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 203–04 (2d Cir.1987) (affirming dismissal for forum non conveniens that was conditioned upon defendant's consent to personal jurisdiction in India; such conditions "are not unusual and have been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition"). Here, Maxus Energy has expressly agreed to submit to the jurisdiction of an Indonesian tribunal. Maxus Energy's agreement, together with the fact that Pelangi, Wirazee and YPF Maxus are headquartered in Indonesia (and therefore squarely within the jurisdiction of the Indonesian courts), supports a conclusion that Indonesia is an "available" forum for this lawsuit.

■ Turning to the issue of whether Indonesia constitutes an "adequate" forum for this litigation, the Court initially emphasizes that "[a]n adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir.2001). Rather, an alternative forum qualifies as "adequate" as long as the parties will be treated fairly and will not be deprived of all remedies there. *See Sydow*, 81 F.Supp.2d at 768; *see also Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 ("In rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative"); *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393–94 (5th Cir.1983) (explaining that a foreign forum is inadequate if conditions there "plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein"). Put another way, the remedy provided by the foreign forum qualifies as inadequate only when it amounts to "no remedy at all." *Piper*, 454 U.S. at 254, 102 S.Ct. at 265. Thus, only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render that forum inadequate. *See, e.g. Sangeorzan v. Yangming Marine Transp. Co.*, 951 F.Supp. 650, 653–54 (S.D.Tex.1997) (deciding that, where defendant was 48% percent owned by the Taiwanese government, Taiwan was not an adequate alternative forum); *Sablic v. Armada Shipping Aps*, 973 F.Supp. 745, 748 (S.D.Tex.1997) (finding that extreme politi-

---

expeditious and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass or oppress the defendant. *Karim*, 265 F.3d at 268 n. 14 (citations omitted). The "public interest" factors include: administrative difficulties, reasonable-

ness of imposing jury duty on the people of the community, holding the trial in the view of those affected, and the local interest in having localized controversies decided at home. *See id.*

cal and military instability in the war-torn region, coupled with a large backlog of cases, rendered Croatian courts inadequate); *Cabiri v. Assasie–Gyimah*, 921 F.Supp. 1189, 1199 (S.D.N.Y.1996) (denying dismissal where Ghanian plaintiff, who had political asylum status, had well-founded fear of prosecution if he brought action alleging torture by Ghanian officials in Ghanian courts); *Rasoulzadeh v. Associated Press*, 574 F.Supp. 854, 861 (S.D.N.Y. 1983) (denying forum non conveniens dismissal because "if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot"); *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.*, 528 F.Supp. 1337, 1342 (S.D.N.Y.1982) (concluding that, where one party was a state owned corporation, "serious questions about the independence of the Chilean judiciary vis a vis the military junta currently in power" rendered Chile an inadequate forum). In this case, such perilous obstacles to justice are not present.

■ Defendants meet their burden of demonstrating that Indonesia qualifies as an adequate forum by offering the affidavit of Harry Ponto, an Indonesian lawyer practicing in Jakarta, who avers that Indonesian law provides analogous causes of action and adequate remedies for Plaintiffs' claims in this case. Ponto further avows that Plaintiffs' claims will not be barred by the Indonesian statute of limitations and that Indonesian law permits Plaintiff to enter into a contingency fee agreement with counsel there. In addi-

tion, Ponto avers that institutional fairness in the Indonesian legal system is ensured by numerous procedural safeguards, including adversarial presentation of oral and written evidence and appellate review. Finally, Defendants cite to cases in which United States courts have previously found Indonesia to constitute an adequate alternative forum in the foreign non conveniens context. *See, e.g. P.T. United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73–75 (2d Cir.1998); *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1484 (9th Cir.1987); *Carney v. Singapore Airlines*, 940 F.Supp. 1496, 1500–01, 1504–05 (D.Ariz.1996); *see also In re Aircrash Disaster Near Palembang*, No. MDL 1276, 2000 WL 33593202, at *1 (W.D.Wash. Jan.14, 2000) (finding that Indonesia was an adequate alternative forum, but denying motion to dismiss for forum non conveniens on other grounds).

■ Plaintiffs do not dispute that they may seek redress for their claims under Indonesian law or that their claims are time-barred in Indonesia. Rather, Plaintiffs primarily argue that the Courts of Indonesia are so corrupt as to make fair and timely resolution of their claims highly unlikely. In support of this argument, Plaintiffs offer voluminous proof of corruption in the Indonesian judiciary-including newspaper articles, statements by prominent Indonesian politicians, the results of a survey conducted by the Partnership for Governance Reform in Indonesia, a World Bank report and statements by the United States government.[5] Nevertheless, while

---

5. The multiple newspaper articles offered by Plaintiffs include (1) an article reporting that the Attorney General of Indonesia, Baharudin Lopa, described the network of corruption within Indonesia's judiciary as a "mafia" threatening all levels of Indonesia's legal system; (2) an article characterizing Indonesia's judiciary as "notoriously corrupt" and reporting that bribery charges were recently levied against at least fifty Indonesian justices and judges; and (3) an article reporting that for-

mer Indonesian Supreme Court Justice Adi Andojo Soejipto "estimated that about 85 percent of Indonesia's judiciary was corrupt." Second, Plaintiffs proffer the results of a national survey, conducted in Indonesia by the Partnership for Governance Reform in Indonesia, ranking Indonesia's judiciary among the most corrupt institutions in the country. The survey also concludes that "weaknesses in the overall legal system render it largely

the Court certainly acknowledges and understands Plaintiffs' concerns about potential unfairness in the Indonesian judiciary, such allegations of corruption fail to render Indonesia an inadequate forum for forum non conveniens purposes.

The Court arrives at this conclusion for two reasons. First, prior cases lend virtually no support to Plaintiffs' "the alternative forum is too corrupt to be adequate" argument. *Cf. Eastman Kodak Co. v. Kavlin*, 978 F.Supp. 1078, 1084 (S.D.Fla. 1997) ("The Court has been unable to locate any published opinion fully accepting [the alternative forum is too corrupt"] argument). The overwhelming majority of courts addressing this argument have rejected allegations of corruption or bias on the part of the foreign forum as a means of preventing a forum non conveniens dismissal. *See, e.g. Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir.1993) (determining that, despite allegations of corruption, Venezuelan court was an adequate alternative forum); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir.1992) (deciding that Turkey was an adequate forum despite plaintiff's claim that Turkish courts were extremely biased against Americans and foreign women); *Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine*, 158 F.Supp.2d 377, 384 (S.D.N.Y.2001) ("Monde Re's conclusory allegations of corruption, whatever weight may be accorded them, are insufficient to render Ukraine an inadequate forum"); *Stalinski v. Bakoczy*, 41 F.Supp.2d 755 (S.D.Ohio 1998) (finding Honduras to be an adequate forum despite plaintiff's evidence of corruption in the court system there); *El–Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 678 (D.C.Cir.1996) (explaining that a State Department Report expressing "concern about the impartiality" of Jordanian courts dis not render that forum inadequate); *Torres v. S. Peru Copper Corp.*, 965 F.Supp. 899, 903 (S.D.Tex.1996) (determining that Peruvian judicial system was not so corrupt as to render Peru an inadequate forum); *but see Eastman Kodak*, 978 F.Supp. at 1087 (finding that defendant failed to meet its burden of showing that Bolivia was an adequate forum where plaintiff produced strong supporting of serious partiality and manipulation there).

Secondly, and more significantly, the Court refuses to sit in judgment upon the integrity of the entire Indonesian judiciary. Making a generalized pronouncement condemning the Indonesian court system as "inadequate" is not the right nor the duty of this Court. *See Blanco*, 997 F.2d at 982 ("[I]t is not the business of our courts

---

inaccessible to the average citizen and ineffective in enforcing the rule of law in society." Next, Plaintiffs quote remarks made by United Nations Secretary–General Kofi Annan and Indonesian lawyer T. Mulya Lubis that corroborate the survey results. In one statement, Lubis calls the Indonesian court system the "most weak and corrupt institution in the country." Plaintiffs also proffer a World Bank report that characterizes Indonesia as "as among the most corrupt countries in the world." And lastly, Plaintiffs cite a report by the Unites States Government which observes that Indonesian judges "are civil servants employed by the executive branch, which controls their assignments, pay and promotion," and concludes that "[l]ow salaries encourage widespread corruption, and [Indonesian]

judges are subject to considerable pressure from government authorities, who often exert influence over the outcome of numerous cases." However, while this extensive evidence is certainly informative, the Court reminds Plaintiffs that, as a general matter, the adequacy or inadequacy of a forum should be established by expert affidavits, not by newspaper articles or other less credible evidence. *See, e.g. Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220, 1230 n. 8 (3d Cir.1995) (discrediting newspaper article as evidence of foreign forum's inadequacy); *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991) (moving party may demonstrate adequacy of alternative forum's law through affidavits and declarations of experts).

to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation"); *Parex Bank v. Russian Sav. Bank*, 116 F.Supp.2d 415, 423 (S.D.N.Y.2000) (explaining that comity required the court to abstain from adversely judging the quality of another nation's justice system); *Monde Re*, 158 F.Supp.2d 377, 385 ("Among its central ends, the forum non conveniens doctrine serves precisely to avert...unnecessary indictments by our judges condemning the sufficiency of the courts and legal methods of other nations"); *see also Leon v. Millon Air*, 251 F.3d 1305, 1313 (11th Cir.2001) (stating that the doctrine of forum non conveniens is not meant to credit "cursory attacks on legal systems simply because they are somewhat slower or less elaborate than ours"). As another federal court recently explained, "principles of comity and the self-fulfilling consequences of a pronouncement of deficiency in the quality of justice in another state, compel judicious restraint from our courts in accepting invitations to engage in such value judgments." *Monde Re*, 158 F.Supp.2d 377, 385. Accordingly, Plaintiffs' general accusations of alleged corruption in the Indonesian judiciary fail to render that country an inadequate alternative forum for this litigation. *See Stalinski*, 41 F.Supp.2d at 761 (finding broad accusations of corruption in Honduras, supported by U.S. State Department reports and statements by the Honduran Attorney–General, insufficient to render Honduras an inadequate forum); *cf. Mercier*, 981 F.2d at 1351 ("[I]t is not unfair that a plaintiff's conclusory claims of social injustice in the foreign nation where [he or] she deliberately chose to live, work, and transact the business out of which the litigation arises should be accorded less

than controlling weight in the selection of a judicial forum for the related litigation").

## IV.

Because the Indonesian courts provide an available and adequate forum for the resolution of this controversy, the Court must now consider whether Defendants, as the moving Parties, have met their burden of establishing that the relevant private interest factors also favor dismissal. The private interest factors relevant to this dispute include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the accident site; (4) enforceability of a judgment against Defendants; and (5) the additional practical issues that would make litigating this matter expeditious and inexpensive.

■ Regarding the first private interest factor, "access to proof," the evidence before the Court indicates that virtually all of the activities forming the basis of this lawsuit occurred in Indonesia. The six eye-witnesses to the crane accident, the individuals who inspected the crane before and after the accident and the persons who signed the accident report all reside in Indonesia. The Doctors who treated Gonzales directly after the accident are located in Indonesia and Singapore (which is much closer to Indonesia than Galveston). The personnel records of the Defendants are likewise located in Indonesia. Apparently, the only material witnesses located in the United States are the Plaintiffs and Gonzales's TIRR therapists. Obviously, access to these sources of proof is less burdensome in Indonesia than in Galveston.[6]

6. The Court acknowledges that, on account of Gonzales's physical limitations, travel to Indonesia for a trial there may prove quite burdensome. However, the Court finds that any difficulties that Gonzales may encounter are not so insurmountable to warrant trying this case here in America. Moreover, the Court observes that this action would never have been filed here to begin with but for the fact that YPF Maxus and Maxus Energy paid

The second private interest factor also favors Indonesia. This Court cannot compel the attendance of unwilling witnesses who live and work on another continent. Conversely, the Indonesian courts are presumably able to compel the attendance of those non-party witnesses located in Indonesia. Moreover, the cost of obtaining the attendance of willing witnesses would be extraordinary if a trial was held in this country, but much less prohibitive in Indonesia. Next, with respect to the third private interest factor, "viewing the premises," the Court observes that a viewing of the crane at issue could only take place in Indonesia, if at all.

Turning to "enforceability of a judgment," the Court initially observes that only one of the four Defendants (Maxus Energy) has assets located in Texas. This fact suggests that any judgment that Plaintiffs may obtain against the Defendants other than Maxus Energy would need to be satisfied by seizing assets located in a foreign country. This is particularly worrisome given the present indication from the pleadings that the Maxus Energy claims to have no true involvement in this action; and contends that it was joined solely "on the chance that YPF Maxus successfully mounted a personal jurisdiction challenge." The Indonesian courts, on the other hand, presumably have jurisdiction to enforce judgments over YPF Maxus, Wirazee and Pelangi-the three Defendants clearly involved in the accident at issue. *See Automated Marine Propulsion Sys., Inc. v. Aalborg Ciserv Int'l A/S,* 859 F.Supp. 263 (S.D.Tex.1994) (justifying dismissal in part on this factor); *Amoco Oil v. Phillipe Martin & Associes,* 811 F.Supp. 253, 258–59 (S.D.Tex.1993) (same). Next, with respect to "other practical issues," the

Court notes that Defendants dispute whether Gonzales was employed by YPF Maxus or Wirazee at the time of his injury. This quarrel creates an additional problem for the Court, seeing that Wirazee has not appeared in this suit and has not indicated any willingness to do so. And moreover, the evidence presented suggests that the Court's exercise of personal jurisdiction over Pelangi is questionable. Thus, this Court's ability to resolve all of the issues underlying this lawsuit is measurably uncertain, at best. It is axiomatic, however, that all four Defendants would be subject to the powers of an Indonesian forum, which would more clearly have jurisdiction to adjudicate all of the wrongs which may have caused Gonzales's injuries.

Thus, the evidence before the Court overwhelmingly supports the conclusion that the relevant "private interest" factors in this case weigh heavily in favor of an Indonesian forum. While the Plaintiffs have shown minimal convenience arising from their choice of forum, the Defendants have demonstrated that, relative to trial in Indonesia, a trial in this Court would prove incredibly burdensome to them. Accordingly, the Court may refuse to exercise jurisdiction in this cause without an examination of the relevant "public interest" factors. *See Automated Marine,* 859 F.Supp. at 269 (citing *Baris,* 932 F.2d at 1550–51).

**V.**

In sum, the Court finds that Indonesia is an available and adequate forum for this litigation; and the relevant "private interest" factors overwhelmingly favor trial of this matter in that country. Therefore, Maxus Energy, YPF Maxus and Pelangi's Motions to Dismiss based on forum non

---

for Gonzales to receive treatment at TIRR. It seems quite inequitable to force these Defendants to litigate this action in a clearly inconvenient forum, when the only connection between the Plaintiffs and this country were created by the efforts of the Defendants themselves.

conveniens are **GRANTED, CONDI-TIONED** on the willingness of Maxus Energy to submit to the jurisdiction of the Indonesian courts for any action Plaintiffs commence in Indonesia, based on these facts, within one year of the date of this Order. This Order renders Defendant Pelangi's Motion to Dismiss for Lack of Personal Jurisdiction **MOOT.**

**IT IS SO ORDERED.**