954 F.2d 1061
 Brenda JONES, Individually and as Administratrix of the
Estate of Evan A.M. Jones, Deceased, Plaintiff-Appellant,
v.
PETTY-RAY GEOPHYSICAL, GEOSOURCE, INC., et al., Defendants.
Total Exploration, Total Soudan, and Total Compagnie
Francais Des Petroles, Defendants-Appellees.
 No. 90-2093.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 28, 1992.
Rehearing Denied April 15, 1992.
 
 Charles L. Roberts, James F. Scherr, El Paso, Tex., for plaintiff-appellant.
 Richard Munzinger, Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, Tex., for Total Exploration, Total Soudan, Intl. Energy & Kuwait et al.
 Edward J. Hennessy, Houston, Tex., for Petty-Ray and Geosource.
 Jon David Ivey, Dotson, Babcock & Scofield, Houston, Tex., for Marathon.
 John H. Boswell, Lauren S. Mattiuzzi, Boswell & Hallmark, Houston, Tex., for Democratic Rep.
 Appeals from the United States District Court for the Southern District of Texas.
 Before GOLDBERG and GARWOOD, Circuit Judges.[1]
 GARWOOD, Circuit Judge:
 
 
 1
 Plaintiff-appellant Brenda Jones (Plaintiff) originally filed this suit in a Texas state court against defendant-appellee Petty-Ray Geophysical Geosource (Geosource) seeking recovery for the death of Evan Jones (Jones). Geosource brought a third-party complaint against defendant-appellee Total Exploration, a French corporation, which then successfully removed the case to the federal district court below and subsequently moved for dismissal based on lack of personal jurisdiction. The district court initially denied the motion to dismiss, but ultimately granted it after reconsideration. We affirm.
 
 Facts and Proceedings Below
 
 2
 On January 21, 1986, Plaintiff, a Texas resident, brought this suit in Texas state court against Geosource, claiming that her husband, Jones, was murdered by anti-government rebels while he was employed by Geosource in the Democratic Republic of the Sudan in April 1984.[2] Plaintiff's cause of action was based on Geosource's negligent failure to warn of danger of which it was aware or should have been aware. Geosource filed a third-party complaint against Total Exploration, seeking contractual contribution and indemnity from Total Exploration, for whom Geosource was performing subcontracting work in the Sudan. On May 23, 1986, Total Exploration successfully removed the case to federal district court pursuant to 28 U.S.C. § 1441, alleging jurisdiction under 28 U.S.C. §§ 1330, 1332. Following removal, Plaintiff added as defendants to the suit Total Compagnie Francais des Petroles (Total CFP) and Total Soudan, also French corporations, and the Republic of Sudan and two corporate instrumentalities of Kuwait. Total Exploration and Total Soudan are wholly-owned subsidiaries of Total CFP, the majority of whose stock is in turn owned by the government of France. All of the foreign defendants moved for dismissal based on lack of personal jurisdiction. On October 3, 1989, the district court entered separate orders dismissing the Republic of Sudan and the Kuwait corporate instrumentalities, but denied the motions to dismiss of Total Exploration, Total Soudan, and Total CFP (collectively, the Total entities). Upon reconsideration on October 27, 1989, however, the Total entities' motions were granted and all the Total entities were dismissed. The district court certified its order dismissing the Total entities as a final order pursuant to Fed.R.Civ.P. 54(b), and we review that dismissal order in the instant appeal.
 
 Discussion
 I. Subject Matter Jurisdiction
 
 3
 Plaintiff first seeks to have the dismissal below vacated and the case remanded to a Texas state court, parties intact, on the ground that federal subject matter jurisdiction is absent.
 
 
 4
 Initially, we note that Plaintiff failed to object below to Total Exploration's removal of the case from Texas state court to federal court, and never moved below to remand. Any defect in removal was therefore waived. Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1546 (5th Cir.1991). However, a waiver of defects in removal does not waive the fundamental requirement of original subject matter jurisdiction. Id. Rather, once the plaintiff has waived the right to contest removal, "[t]he jurisdictional issue on appeal becomes whether the federal district court would have had jurisdiction over the case had it originally been filed in federal court." Kidd v. Southwest Airlines Co., 891 F.2d 540, 546 (5th Cir.1990); see also Grubbs v. General Electric Credit Corp., 405 U.S. 699, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). Three possible bases for subject matter jurisdiction have been advanced by the Total entities.
 
 A. Diversity of citizenship
 
 5
 Total Exploration removed the case in part based on 28 U.S.C. § 1332, which authorizes original jurisdiction between, inter alia, "citizens of a State, and foreign states or citizens or subjects thereof." 28 U.S.C. § 1332(a)(2). Plaintiff (administratrix of Jones' estate) challenges removal on this ground, pointing to 28 U.S.C. § 1332(c)(2), which provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same state as the decedent." Both parties agree that Jones was a British national; therefore, Plaintiff argues that she is an alien for diversity purposes, and thus diversity jurisdiction was destroyed by the presence of alien parties on both sides of the controversy. See Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp., 506 F.2d 757, 758 (5th Cir.1975); see also Field v. Volkswagenwerk AG, 626 F.2d 293, 296 (3d Cir.1980). However, the provision on which Plaintiff relies was not effective until May 18, 1989, some three years after the suit was removed. Prior to the amendment, the rule in this Circuit was that "an administratrix's citizenship will govern the diversity inquiry" unless the administratrix was selected to manufacture diversity. Bianca v. Parke-Davis Pharmaceutical Div., 723 F.2d 392, 394 (5th Cir.1984). There are no grounds for concluding that Plaintiff, a citizen of Texas, is trying to manufacture diversity; in fact, she argues against it.
 
 
 6
 Although Plaintiff may have relied on the wrong provision (a matter we do not ultimately decide) in asserting that diversity is incomplete, her assertion is nevertheless correct for another reason. In their diversity argument, the Total entities overlooked the fact that co-defendant Geosource, a Delaware corporation with its principal place of business in Texas, is a Texas citizen for diversity purposes 28 U.S.C. § 1332(c)(1). Because section 1332 grants federal subject matter jurisdiction only where diversity of the parties is complete,[3] Getty Oil, Div. of Texaco v. Insurance Co. of North America, 841 F.2d 1254, 1258 (5th Cir.1988), the presence of a Texas party on each side of the litigation removes diversity of citizenship as a possible basis of subject matter jurisdiction in this case. See also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989) (recognizing that 28 U.S.C. § 1332(a)(3) confers jurisdiction in federal district court when a citizen of one state sues both aliens and citizens of a state (or states) different from the plaintiff's state ).
 
 B. Foreign Sovereign Immunities Act
 
 7
 The Total entities also argue that jurisdiction was proper under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 et seq. and under 28 U.S.C. § 1330, which authorizes an exercise of subject matter jurisdiction over actions against foreign states. The Supreme Court has held that the FSIA grants jurisdiction to the federal courts over claims of foreign states to sovereign immunity, and, furthermore, provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country. Argentine Republic v. Amerada Hess Shipping Co., 488 U.S. 428, 109 S.Ct. 683, 692, 102 L.Ed.2d 818 (1989). Thus, the purpose of the FSIA is dual: "to provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a foreign state is entitled to sovereign immunity." H.R.Rep. No. 94-1487, 94th Cong., 2d Sess. 6, reprinted in 1976 U.S.Code Cong. & Admin.News 6604 (1976).
 
 
 8
 None of the Total entities claims to be an arm or agency or instrumentality of the French government. See 28 U.S.C. § 1603(b). Accordingly, at the time of removal, when only Geosource and Total Exploration were defendants, jurisdiction was not proper under the FSIA. However, after removal Plaintiff added the Republic of Sudan and two corporate instrumentalities of Kuwait, parties within the scope of the FSIA. See 28 U.S.C. § 1603. The Total entities argue that, because Plaintiff waived defects in removal, jurisdiction under the FSIA can be sustained on the basis of the presence of the Republic of Sudan and the Kuwait instrumentalities. See Kidd, 891 F.2d at 546. Assuming, arguendo only, that this requirement for FSIA federal court jurisdiction is thus satisfied, we nevertheless conclude that FSIA federal court jurisdiction was lacking on another ground.
 
 
 9
 Whether subject matter jurisdiction may be premised on the FSIA turns on application of the Act's substantive provisions. Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983). Under section 1330(a), the jurisdictional statute corresponding to the FSIA, federal district courts are vested with subject matter jurisdiction if a foreign state is "not entitled to immunity either under sections 1605-1607 [of the FSIA] ... or under any applicable international agreement." 28 U.S.C. § 1330(a). Conversely, if none of the exceptions to sovereign immunity set forth in the FSIA applies, the district court lacks statutory subject matter jurisdiction.[4] Verlinden, 103 S.Ct. at 1969; see also Amerada Hess, 109 S.Ct. at 692. Thus, where a case is removed based on the FSIA and section 1330, federal jurisdiction over both foreign and nonforeign parties does not attach until it is determined that the foreign sovereign lacks immunity pursuant to the FSIA.[5] Security Pacific Nat'l Bank v. Derderian, 872 F.2d 281, 283 (9th Cir.1989); Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 372-73 (7th Cir.1985).
 
 
 10
 Under the FSIA, exceptions to immunity include any action
 
 
 11
 "not otherwise encompassed in paragraph (2) above [commercial activities], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment...." 28 U.S.C. § 1605(a)(5) (emphasis added).
 
 
 12
 This exception requires not only that personal injury or property damage occur in the United States, but also that the tortious act or omission occur here. Amerada Hess, 109 S.Ct. at 690-91. Our analysis is therefore governed by the fact that Jones' alleged murder, and his death, occurred in the Sudan. Because none of the other exceptions encompassed within the FSIA is applicable,[6] we hold that jurisdiction cannot be premised on the FSIA in this case.
 
 C. Third-party claim
 
 13
 Finally, the Total entities argue that the case was removable based on Geosource's third-party claim against Total Exploration for contractual indemnity. See In re Wilson Industries, Inc., 886 F.2d 93, 96 (5th Cir.1989) (recognizing that removal of an entire action can be based on a third-party claim where a separate and independent controversy is stated). 28 U.S.C. § 1441(c), as in effect when this suit was filed and removed, and when the complained of dismissal was entered, provided:[7]
 
 
 14
 "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."
 
 
 15
 Because Geosource and Total Exploration are diverse, federal jurisdiction would be proper over Geosource's claim for indemnity if brought alone. See 28 U.S.C. § 1332(a)(2). Our focus shifts, then, to whether Geosource's claim against Total Exploration represents a separate and independent cause of action.
 
 
 16
 This Court has held that where the third-party complaint seeks indemnity based on a separate obligation owed to the defendant (such as a contractual indemnity obligation), there is a separate and independent claim. Carl Heck Engineers v. Lafourche Parish Police Jury, 622 F.2d 133, 136 (5th Cir.1980). The record discloses that Geosource sought indemnity from Total Exploration based on the contract between them.[8] Therefore, following the teachings of Carl Heck Engineers, we conclude that the present action was properly removed to federal district court pursuant to former section 1441(c), and the district court then properly exercised subject matter jurisdiction over this entire litigation.
 
 
 17
 Finally, we note our holding in Walker v. Savell, 335 F.2d 536, 538-39 (5th Cir.1964), where we sustained the trial court's authority to grant a motion to quash service of process before hearing a pending motion to remand. See also Nolan v. Boeing Co., 736 F.Supp. 120, 122 (E.D.La.1990).
 
 II. Personal Jurisdiction
 A.
 
 18
 In the determination of whether a foreign corporation should be required to defend itself in a suit in Texas arising out of a contract between it and a Texas corporation, each case must be decided on its own facts. Southwest Offset, Inc. v. Hudco Pub. Co., 622 F.2d 149, 151 (5th Cir.1980). The facts giving rise to the instant litigation take us back to November 1980, when the Republic of Sudan, Public Petroleum Corporation, International Energy Development Corporation (IEDC, a Swiss corporation), and Total Exploration (Sudan branch) entered into a petroleum sharing contract, which contemplated joint exploration for hydrocarbon substances in southern Sudan. Total Exploration, which had a sixty-five percent share in the venture, invited Geosource (via telex to Geosource's United Kingdom office, the location of Geosource's headquarters for its operations in Africa and the Middle East) to bid as a subcontractor on the project. Other companies were also solicited to bid, but only Geosource responded. Although technical details of the contract were worked out by telephone and telex mainly between Geosource's United Kingdom office and Total Exploration's offices in Paris and Khartoum, several communications originated from Geosource's legal department in Houston, Texas. No face-to-face negotiations were conducted in Texas (or the United States, for that matter).
 
 
 19
 The contract between Total Exploration and Geosource was signed on July 16, 1981, in the United Kingdom. Included within the provisions of the final contract were requirements that Geosource provide equipment and personnel to perform the contract. The place of origin of such materials was not specified. The contract also contained choice of law and arbitration clauses, which dictated that all questions arising under the contract were to be resolved in London through binding arbitration in accordance with the rules of the International Chamber of Commerce, with English law supplying the rule of decision.
 
 
 20
 All material performance by Geosource under the contract, which consisted of seismic exploratory operations, occurred in the Sudan. All data processing work was performed in the United Kingdom, and final written reports were sent to Total Exploration in Khartoum. Compensation from Total Exploration to Geosource was chiefly effected through Morgan Guaranty Bank in London.
 
 
 21
 Total Exploration is a French corporation engaged in the exploration and production of petroleum. It is based in France. It has never done or been licensed to do business in Texas, nor does it own property of any type or have any employees in Texas. On April 1, 1983, Total Exploration's interest in the contract was assigned to Total Soudan.
 
 
 22
 Total Soudan is also incorporated in France. Its business activities have been conducted exclusively in the Sudan. It does no business in Texas, nor is it qualified to do so, and it has no property or employees there.
 
 
 23
 Total CFP is a French corporation. It is the parent company over all the world-wide Total Group operations and subsidiaries. No subsidiary of Total CFP is incorporated in Texas. Total CFP is not qualified to do business in Texas; moreover, the record reflects that it does not do any business directly in Texas or have any employees or property there.
 
 B.
 
 24
 Two preconditions generally must be satisfied to allow personal jurisdiction over nonresident defendants served out of state: (1) the nonresident must be amenable to service of process under the forum state's long-arm statute (an issue that is governed by the law of the forum state); and (2) if the state jurisdictional test is met, the assertion of jurisdiction over the nonresidents must be consistent with the Fourteenth Amendment due process clause. DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1265 (5th Cir.1983). The burden of establishing the district court's personal jurisdiction over the Total entities in this case rests on Plaintiff. D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 545 (5th Cir.1985). However, only a prima facie case must be established; proof by a preponderance is not required. Id. at 545-46. Any genuine, material conflicts between the facts as established by the respective parties' appropriate affidavits, and other proper summary judgment type evidence, must be resolved in Plaintiff's favor. Id.
 
 
 25
 The Texas long-arm statute authorizes the exercise of jurisdiction over, inter alia, those who do business in Texas, which includes contracting with a Texas resident where either party is to perform the contract in whole or in part in Texas. Tex.Civ.Prac. & Rem.Code § 17.042 (Vernon 1986) (replacing Vernon's annotated civil statutes article 2031b). Because the Texas long-arm statute has been interpreted to extend to the limits of due process, see Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex.1990),[9] ] the principal question here is whether the assertion of jurisdiction over the Total entities by the district court is constitutionally permissible. See Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 772 n. 15 (5th Cir.1988).
 
 
 26
 Under the federal constitutional test of due process, the plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant. The first prong of the analysis is the "minimum contracts" test, under which the plaintiff must establish that the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Those activities, whether direct acts in the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The minimum contacts analysis has been further refined by the Supreme Court into specific and general jurisdiction. Where the defendant's activities in the forum are isolated or disjointed, jurisdiction is proper only if the cause of action arises from a particular activity. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984). On the other hand, where the defendant's forum activities are continuing and systematic, jurisdiction may be proper without a relationship between a defendant's particular act and cause of action. Id. 104 S.Ct. at 1872 & n. 9. The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.
 
 
 27
 The second prong of the federal due process test requires a showing that the exercise of personal jurisdiction over the nonresident comports with fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In this inquiry, it is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 2184-85, 85 L.Ed.2d 528 (1985).
 
 C.
 
 28
 Plaintiff predicates jurisdiction over Total Exploration on its contract with Geosource, under which Jones was employed by Geosource at the time of his death. In contract cases, this Court has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts. See Barnstone v. Congregation Am Echad, 574 F.2d 286, 288 (5th Cir.1978). With regard to performance under the contract between Total Exploration and Geosource, the only Texas activity that Plaintiff has shown is unilateral activity by Geosource. In particular, Plaintiff relies on the following as support that the contract sufficiently tied Total Exploration to Texas: (1) Geosource was required to purchase materials from Total Exploration, and Total Exploration knew the funds would originate from Texas; (2) a portion of Geosource's performance occurred in Texas; i.e., employment of Texas residents, payment for equipment purchases, and arrangement of work schedules; and (3) Geosource was required to maintain insurance, which was foreseeably obtained in Texas.[10] In Barnstone, we rejected similar conduct as a basis for personal jurisdiction over the nonresident defendant. There, a Texas-based architect was employed to design a synagogue in Maine. The architect claimed that because his work on drawings and models occurred in Texas, the contract for services tied the out-of-state defendant to Texas. We disagreed, holding that the architect's activities in Texas "would appear to constitute unilateral partial performance," which could not "satisfy the requirement of contact with the forum state." Barnstone, 574 F.2d at 289.
 
 
 29
 In addition to adhering to a contacts analysis focusing on the place of performance, this Court has also recognized that the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity. See Southwest Offset, Inc. v. Hudco Publishing Co., 622 F.2d 149, 152 (5th Cir.1980). Although a relatively small part of the negotiations on the Geosource contract were conducted via telexes between Texas and France, we believe that in itself is insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws. Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir.1983), cert. denied, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). Moreover, the record reflects that the contract was negotiated primarily in the United Kingdom, and contained a choice of law clause requiring arbitration under English law. Thus, the circumstances surrounding the negotiation and formation of the contract indicate rather forcefully that Total Exploration did not purposefully direct its activities toward Texas. This is not a case in which a foreign corporation has reached out and created "continuing relationships and obligations with citizens of another state," Burger King, supra, 105 S.Ct. at 2182; rather, Total Exploration negotiated with Geosource's United Kingdom office for exploration work in the Sudan, and the fact that Geosource has a Houston office is nothing more than a mere fortuity.
 
 D.
 
 30
 We believe that Plaintiff has failed to make a prima facie showing that Total Exploration availed itself of the privilege of conducting business in Texas or of the benefits and protections of Texas law even under the narrow specific jurisdiction standard.[11] Moreover, even were we to impute Total Exploration's Texas contacts to Total CFP and Total Soudan, and vice versa, we would still conclude that Plaintiff has failed to demonstrate the requisite minimum contacts on behalf of any of the Total entities,[12] Further, even if Plaintiff could establish minimum contacts, we believe it would be unreasonable to find personal jurisdiction over the Total entities here. See Reich v. Signal Oil & Gas Co., 409 F.Supp. 846, 851 (S.D.Tex.1974) (recognizing that Texas has no "special" interest in granting relief to its citizens against a foreign corporation on a cause of action that arose under the laws of a foreign government for conduct outside the United States), aff'd mem., 530 F.2d 974 (5th Cir.1976).
 
 Conclusion
 
 31
 For the reasons stated, the judgment of the district court dismissing Plaintiff's claims against Total CFP, Total Exploration, and Total Soudan for lack of personal jurisdiction is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Chief Judge Charles Clark was a member of the original panel but resigned from the Court on January 15, 1992, and therefore did not participate in this decision. This matter is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [2]
 Total Exploration and others of the foreign defendants denied that Jones was murdered or that Plaintiff is his widow. Indeed, evidence in the record casts doubt on both propositions
 
 
 [3]
 This complete diversity requirement is based on the diversity statute, not Article III of the Constitution. State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 1203-04, 18 L.Ed.2d 270 (1967)
 
 
 [4]
 In such a case, the foreign state is also ensured immunity from the jurisdiction of state courts by section 1604. Verlinden, 103 S.Ct. at 1969
 
 
 [5]
 In this regard, we note that our posture in this case is somewhat unusual because the foreign sovereigns are not before this Court, yet we determine their entitlement to immunity under the FSIA in deciding that the district court was not vested with subject matter jurisdiction under the FSIA. See Verlinden, 103 S.Ct. at 1971 n. 20 (concluding that even if the foreign state does not enter an appearance, a district court must still determine, as a prerequisite to exercising jurisdiction, whether immunity is unavailable under the FSIA)
 
 
 [6]
 The other exceptions are (1) waiver of immunity by the foreign state; (2) actions based on the commercial activities by a foreign state carried on in the United States or that have a direct effect in the United States; (3) a taking in violation of international law; (4) succession to property in the United States; and (6) maritime liens based upon a commercial activity of the foreign state. 28 U.S.C. § 1605(a). Of these additional exceptions, only section 1605(a)(2) (commercial activities) might conceivably apply; however, like section 1605(a)(5), this provision encompasses only injuries or acts within the United States. Here, Jones died in the Sudan, and there is no allegation that the foreign sovereigns acted within the United States to cause his death. Cf. Zernicek v. Brown & Root, Inc., 826 F.2d 415, 419 (5th Cir.1987) (holding that the eventual effect in the United States of the personal injury or death of an American citizen while abroad is not direct within the meaning of the FSIA even if the foreign government might foresee that a United States citizen might be injured while travelling or working in the territory), cert. denied, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). Accordingly, we conclude that none of these exceptions to foreign sovereign immunity applies in this case
 
 
 [7]
 As presently in effect, section 1441(c) provides:
 "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."
 
 
 [8]
 The agreement for geophysical services between Total Exploration (the "Company") and Geosource (the "Contractor") provided in part that:
 "COMPANY shall protect, indemnify, defend and save CONTRACTOR, its officers and directors, harmless from and against all claims, liabilities, demands, causes of action and judgments ... arising in favor of or asserted by COMPANY, its subcontractors (other than CONTRACTOR) or the employees of either on account of damage to the property of COMPANY, its subcontractors (other than CONTRACTOR) or the employees of either."
 
 
 [9]
 To ensure compliance with due process, the Texas Supreme Court has devised a jurisdictional formula, which it recently clarified in Guardian Royal Exchange Assurance Ltd. v. English China Clays, PLC, 815 S.W.2d 223, 230 (Tex.1991):
 "[T]he nonresident defendant must have purposefully established 'minimum contacts' with Texas. There must be a 'substantial connection' between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas. When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas." (footnotes omitted).
 
 
 [10]
 The Total entities dispute several of Plaintiff's factual contentions. However, we need not resolve these factual disputes
 
 
 [11]
 Because we conclude that minimum contacts are lacking, we do not resolve the issue of whether Plaintiff's cause of action for wrongful death arose out of the contract between Total Exploration and Geosource
 
 
 [12]
 As evidence of minimum contacts on behalf of Total CFP, Plaintiff alleges that Total CFP is a majority stockholder in eleven corporations with offices in Texas. However, we do not believe that mere stock ownership in Texas businesses reflects an activity "purposefully direct[ed]" toward Texas. As for imputing contacts of the subsidiaries to Total CFP, we have previously recognized that even ownership of 100% of the stock of a subsidiary is alone insufficient to fuse the subsidiary into the parent for purposes of establishing minimum contacts. See Walker v. Newgent, 583 F.2d 163, 167 (5th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). See also Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 774 n. 18 (5th Cir.1988). With regard to Total Soudan, Plaintiff points to the purchase of equipment from a Texas firm. We believe such activity does not satisfy the minimum contacts test. See Hall, supra, 104 S.Ct. at 1874 (holding that the mere purchase of goods is not enough to support jurisdiction where the claims do not arise out of such purchases). Plaintiff also points to Total Soudan's dealings with Marathon Oil (which Plaintiff claims is a Texas firm). Not only were these dealings wholly unrelated to Jones' death, but the venture centered on activities not in Texas, but overseas
 Plaintiff alleges no other contacts in Texas on behalf of the Total entities, other than attempting to attribute contacts of the entities to each other under an agency or alter ego theory. We do not address the validity of Plaintiff's arguments for imputing the contacts of each Total entity to the others because we find, even considering the Texas contacts of these three entities en masse, that such contacts do not withstand constitutional scrutiny.