**Michael SYDOW and Sydow
& McDonald, L.L.P.,
Plaintiffs,**

v.

**ACHESON & CO., Deborah A., Acheson,
Kevin W. Whitley, Connell Lightbody,
Patrick G. Guy, Mark Steven, Robert
W. Cameron, Glennys Bembridge, and
Heather Donison, Defendants.**

No. CIV. A. G–99–360.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 26, 2000.

759

Russell Thomas Lloyd, O'Quinn & Laminack, Houston, TX, mediator.

Richard Lee Melancon, Melancon and Hogue, Michael W Hogue, Anthony G Buzbee, Melancon & Hogue, Friendswood, TX, for Michael Sydow, Sydow & McDonald.

George William Vie, III, Mills Shirley et al., Galveston, TX, Gary M Polland, Polland and Cook, Houston, TX, for Acheson & Company, Deborah A Acheson, Kevin W Whitley, Patrick G Guy, Mark Steven.

Wade B Williams, Lewis and Williams, Galveston, TX, for Robert W Cameron, Heather Donison, Connell Lightbody.

*ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING DEFENDANTS' MOTIONS FOR MORE DEFINITE STATEMENT*

KENT, District Judge.

Plaintiffs bring this claim against Defendants alleging a variety of claims arising from a contract allegedly reached by the parties in July 1995. Now before the Court are Motions to Dismiss for Lack of Subject Matter Jurisdiction, for Lack of Personal Jurisdiction, and for *Forum non Conveniens*, which were filed by Defen-

dants Acheson & Company, Deborah A. Acheson, Kevin W. Whitley, Mark Steven, and Robert W. Cameron on August 4, 1999. Alternatively, Defendants move for More Definite Statement. Defendants Connell Lightbody and Heather Donison filed separate but identical Motions to Dismiss and Motions for More Definite Statement with the Court on November 15, 1999 and December 27, 1999, respectively. For the reasons stated below, the Motions to Dismiss and Motions for More Definite Statement submitted by Defendants Acheson & Co., Deborah A. Acheson, Kevin W. Whitley, Cornell Lightbody, Mark Steven, and Heather Donison are all **DENIED**, but Defendant Robert W. Cameron's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

## I. FACTUAL SUMMARY

This suit stems from Defendants' alleged repudiation of a legally binding contract. In January 1994, Defendant Whitley, acting on behalf of all Defendants, entered into an agreement with Plaintiffs to jointly pursue the claims of eighty-four Canadian breast implant litigants in Texas state court.[1] Eventually, those suits were dismissed based on *forum non conveniens*.

Defendants, however, allegedly reached a second agreement with Plaintiffs in July 1995. That "contract" provided that Plaintiffs assist Defendants in representing one hundred nine of Defendants' Canadian breast implant claimants in a bankruptcy proceeding that had been filed in Michigan by the Dow–Corning Corp. Specifically, the "contract" called for Plaintiffs to aid Defendants in liquidating Defendants' clients' breast implant claims, regardless of whether such liquidation occurred in the United States or in a class action filed in Canada. Moreover, Plaintiffs agreed to assist Defendants in enforcing all judg-

1. Acheson & Company and Connell Lightbody are both law firms based in Canada. All of the individual Defendants are attorneys licensed to practice law in Canada. Robert W. Cameron and Kevin W. Whitley are employ-

ees of the law firm Acheson & Company, and Deborah Acheson serves as a partner at the firm. Mark Steven is a partner at Connell Lightbody and Heather Donison is employed at that firm.

ments in United States bankruptcy court. In return, Plaintiffs were to receive a 50% share of the contingency fees obtained by Defendants.

In support of their obligations under the alleged contract, Plaintiffs claim to have allocated enormous time and resources conducting discovery and gathering evidence. Much correspondence between Plaintiffs and Defendants ensued, and on more than one occasion Defendants sent attorneys to Houston to access the voluminous materials Plaintiffs had accumulated in its Texas offices. Ultimately, the Canadian breast implant claims were liquidated through a class action filed in British Columbia, Canada. On February 16, 1999, the Supreme Court of British Columbia approved a $25 million settlement reached by the Canadian breast implant claimants and Dow–Corning, with payments beginning in late 2000. That court also approved a contingency fee agreement for class counsel, subject to the actions of an independent administrator. This settlement, however, now awaits confirmation by a United States Bankruptcy Court in Michigan. With a settlement for the Canadian breast implant litigants reached, Plaintiffs allege that Defendants have terminated the July 1995 agreement and therefore will refuse to compensate Plaintiffs as originally promised once the contingency fees become available. Consequently, Plaintiffs have filed suit against Defendants alleging breach of contract, breach of fiduciary duty, fraud, conversion, and promissory estoppel.

## II. MOTION TO DISMISS

### A. *Standard of Review*

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### B. *Subject Matter Jurisdiction*

■ Defendants first argue that Plaintiffs' claims are not ripe for adjudication, because Defendants have not collected any fees in connection with the breast implant settlement. The Court, however, finds the issue raised by Defendants moot, as Plaintiffs filed an Amended Complaint on December 2, 1999 seeking, pursuant to 28 U.S.C. § 2201 (1994), declaratory relief over the disputed fees once they are awarded and distributed to Defendants. Recognizing that a suit brought under the declaratory Judgment Act does not, by itself, confer jurisdiction upon federal courts, the Court must determine whether an independent basis for jurisdiction exists. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). In this case, the Court holds that Plaintiffs' claims are valid under 28 U.S.C. § 1333.

■ While the Texas Plaintiffs cannot receive immediate enforcement of their declaratory claims, the fact remains that the $6 million contingency fee likely to be awarded to the Canadian Defendants as a result of the breast implant settlement exceeds the $75,000 threshold necessary to invoke diversity jurisdiction. *See* 28 U.S.C. § 1333. More importantly, because Defendants continue to vehemently deny a contractual obligation to split any portion of the fees with Plaintiffs, the Court finds that an actual, justiciable controversy exists concerning the parties' rights to the

contingency fee award so as to confer subject matter jurisdiction upon the Court. *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (observing that a "controversy" as contemplated by the Declaratory Judgment Act boils down to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). Furthermore, because there is "a substantial possibility" that the fee award will in fact be granted, the case is ripe for adjudication notwithstanding the existence of a future contingency regarding the fee award. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586–87 (5th Cir.1987) (noting that the judicial resolution of contingent claims is consistent with the purpose of the Declaratory Judgment Act, which is " 'to settle actual controversies before they ripen into violations of law or breach of some contractual duty' " (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949))); *see Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir.

1993) (concluding that "the ripeness inquiry focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention"). Given that there is a substantial possibility that Defendant will receive the contingency fees, the Court finds that Plaintiffs' claims present an actual controversy ripe for review. And, by exercising supplemental jurisdiction under 28 U.S.C. § 1331, the Court also possesses jurisdiction over Plaintiffs' remaining contract and tort claims. Accordingly, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**.

### C. *Personal Jurisdiction*

Defendants next argue that the exercise of personal jurisdiction is improper. Defendants Acheson, Whitley, Steven, Cameron, and Donison all reside in Canada, and Defendants Acheson & Company and Connell Lightbody are both Canadian law firms each with a principal place of business outside of Texas. Together, all Defendants assert that contacts with Texas are so limited as to justify dismissal pursuant to FED. R. CIV. P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over them.[2]

---

**2.** Collectively, Defendants have filed an utterly discombobulated assortment of motions regarding personal jurisdiction. Defendants Acheson & Company, Deborah A. Acheson, Kevin W. Whitley, Mark Steven, and Robert W. Cameron were the first to file a motion questioning personal jurisdiction. The only portions of that motion relevant to the ultimate disposition of the personal jurisdiction claims are found in paragraphs 24 and 26 (a mere nine sentences). Even then, the argument pertains only to Defendants Deborah A. Acheson, Whitley, Cameron, and Stevens. They stress the minimal amount of contact each of these noncorporate Defendants has had with the Texas forum. Because the corporate Defendant was not named as a party disputing personal jurisdiction, the Court assumes that Defendant Acheson & Co. accedes to personal jurisdiction.

Then, in apparent haste, Defendant Connell Lightbody, a Canadian partnership, files a two-page Motion to Dismiss "adopt[ing], in its entirety" the Motion to Dismiss filed by Defendants Deborah A. Acheson *et al.* The

Court finds this procedural maneuvering tremendously unhelpful. As noted above, the Motion filed by Defendants Acheson *et al.* focused only on the limited number of contacts the *noncorporate* Defendants had with the Texas forum—it did not couch the argument in terms of personal jurisdiction vis-a-vis the corporate contacts. "Adopting" that Motion, therefore, sheds zero light on why Defendant Connell Lightbody, a law firm, lacks contacts with Texas. Defendant Connell Lightbody's arguments should appear in its Motion; they should not merely be tucked away in an affidavit attached as an exhibit.

Similarly, Defendant Donison filed a Motion to Dismiss "adopt[ing], in its entirety" the same motion relied upon by Defendant Connell Lightbody. This, too, is silly and sloppy. The finding of personal jurisdiction is a fact-specific endeavor, unique to each Defendant; using the language "adopt, in its entirety" only serves to hinder the decision making process and does not, by itself, constitute a viable legal argument.

■ In federal court, personal jurisdiction over a nonresident defendant is proper when: (1) the defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990).

■ Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *See Wilson*, 20 F.3d at 647. For general jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar*, 990 F.2d at 1496. This case, however, turns on specific jurisdiction.

■ Specific jurisdiction exists over a non-resident defendant if the defendant has " 'purposely directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993). The critical inquiry for specific jurisdiction, therefore, concerns whether the defendant, by directing activities to the forum state, purposefully availed itself of the privilege of conducting activities within the forum state, thereby "invoking the benefits and protection of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2182. Ultimately, the defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court in that state. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). But a single contact with the forum state can be sufficient to support specific jurisdiction. *See Ruston*, 9 F.3d at 419. Moreover, the Court notes that although the burden is on Plaintiff, he need only make a prima facie showing of jurisdiction, and his allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in Plaintiff's favor. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990).

### 1. Minimum Contacts

■ Because this action arises out of contacts that Defendants have had with the state of Texas, it is evident to this Court that specific jurisdiction is applicable. Because seven different Defendants assert objections to personal jurisdiction, the Court turns to their individual contacts with the Texas forum.

■ In a case involving a contract, the place of performance can determine

whether the making of a contract satisfies the minimum contacts requirement. *See Jones,* 954 F.2d at 1068 (observing that the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts"); *Phillips Exeter Academy v. Howard Phillips Fund,* 196 F.3d 284, 289 (1st Cir.1999) ("In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." (citing *Jones,* 954 F.2d at 1068)); *Polythane Sys., Inc. v. Marina Ventures, Int'l, Ltd.,* 993 F.2d 1201, 1205 (5th Cir.1993); *Command–Aire Corp. v. Ontario Mechanical Sales and Serv., Inc.,* 963 F.2d 90, 94 (5th Cir.1992) (both stating that the place where a contract is to be performed is a "weighty consideration"); *Barnstone v. Congregation Am Echad,* 574 F.2d 286, 288 (5th Cir.1978) ("It is the place of performance rather than execution, consummation or delivery which should govern the determination of [personal] jurisdiction over nonresident in contract action."); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974) ("[P]erformance, contemplated or accomplished, is the touchstone."). Here, Defendants allegedly sought out the services of Plaintiffs and purposefully entered into "contracts" with a Texas law firm that required Plaintiffs to perform a substantial portion of their contractual obligations in Texas. *See Beechem v. Pippin,* 686 S.W.2d 356, 362 (Tex.App.—Austin 1985, no writ) (noting that active solicitation of a contractual relationship with a Texas resident is sufficient to establish personal jurisdiction over a nonresident defendant).

Specifically, Defendants "contracted" to have Plaintiffs participate in their clients' breast implant litigation both in Texas and Michigan. These "contracts" implicate Defendants Whitley, Steven, Donison, and Acheson, because, despite Defendants' claims to the contrary, each either agreed to the "contracts" or served to terminate the agreements. *See Pls.' Resp. to Defs.' Mot. to Dismiss Ex. B at 1* (designating Defendant Whitley as the signatory who entered into a written agreement with Plaintiffs on behalf of Defendant Acheson & Company on July 26, 1995, and stating in a letter mailed to Texas that "Mark Steven, Glennys Bembridge, and Heather Donison have agreed to your representation of our Dow Corning clients in the Dow Corning Bankruptcy proceedings.... Please let *us* know if this [sic] acceptable to you" (emphasis added)); *Id.* at 9–10 (confirming by fax that Defendants Acheson, Steven, Donison, and Whitley *"have agreed* to you representing our Dow Corning clients in the Bankruptcy proceedings" (emphasis added)); *Id.* Ex. F at 3–4 (showing that on June 30, 1995 Defendant Whitley sent to Plaintiff Sydow a fax stating that "[f]urther to our telephone conversation earlier this week, I write to inform you that Mark Steven, Glennys Bembridge, Heather Donison, and Deborah [Acheson], and I *have agreed* to your representation" in the Dow Corning Bankruptcy proceeding (emphasis added)); *Id.* at 5–6 (showing that a fax sent to Plaintiff Sydow in Texas included the following: "Further to our telephone conversation this morning I am faxing the proposal *agreed to* by Acheson & Company, Mark Steven, Glynnys Bembridge and Heather Donison" (emphasis added)); *Id.* Ex. C at 1–2 (demonstrating that on May 26, 1998 Defendants Whitley and Acheson faxed a letter to Plaintiff Sydow in Texas terminating the original agreements reached between the parties); *Id.* at 3–4 (indicating that on October 8, 1998, Defendants Whitley and Acheson transmitted a fax to Plaintiff Sydow's office in Houston reviewing the terms of the original agreement, explaining the reasons for the termination of the agreement, and requesting Plaintiff Sydow to "arrange a telephone appointment to discuss these matters"); *Id.* Ex. F

at 1–2 (revealing a letter dated November 7, 1994 in which Defendant Acheson reviews documents filed by Plaintiffs in Texas state court and discusses overall strategy for the case).

In fulfilling its obligations under the "contracts" signed with Defendants, Plaintiffs first filed suit on behalf of Plaintiffs' breast implant clients in Texas and later joined in representing Defendants' clients in the Dow Corning bankruptcy proceedings, which took place in Michigan. As a result of these actions, Plaintiffs accumulated and stored a substantial amount of relevant discovery (which Defendants apparently relied upon) in Texas—documents applicable to both the Texas lawsuit and the bankruptcy proceeding. Thus, Plaintiffs' action arises from an alleged contract having a substantial connection to Texas. *See Burger King*, 471 U.S. at 480, 105 S.Ct. at 2186.

These "contracts," therefore, not only called for performance to occur in Texas, but Plaintiffs did, in fact, perform on the "contracts" in Texas. Thus, the longstanding relationship enjoyed by the parties in this case derived from these agreements. While the parties dispute the viability of any contract involving the settlement of the class action suit in Canada, the Court, for the time being, need only embrace the fact that those Defendants—whose names appear on the correspondence string-cited above—agreed, at some point, that Plaintiffs not only represent clients in Texas, but also that Plaintiffs perform work on behalf of other breast implant claimants in the Michigan bankruptcy proceeding. Defendants entered into these agreements recognizing that Plaintiffs would perform on those "contracts" in Texas. Although this evidence appears to satisfy the purposeful availment requirement, other evidence un-

derscores the appropriateness of such a conclusion.

 In addition to communicating with Plaintiffs by mail, phone, and fax, several Defendants traveled to Texas—one came specifically to review documents collected by Plaintiffs. Defendant Acheson acknowledges that she traveled to Texas in 1992 to attend a seminar regarding multidistrict federal breast implant litigation. *See Defs.' Mot. to Dismiss at 9.* Likewise, Defendant Steven admits traveling to Dallas, but states it was for personal reasons. Plaintiffs, however, have uncovered a document that disputes the nature of Defendant Steven's visit to Texas. In a letter dated September 16, 1996, Mr. Norman W. Feaver of Connell Lightbody writes that "Mark [Steven] will be attending· the Breast Implant Conference in Dallas from the 26th to 28th of September 1996." *Pls.' Resp. to Defs.' Mot. to Dismiss Ex. G at 4.* Presumably, then, Defendant Steven traveled to Texas for reasons connected to the very same breast implant suits that now form the basis for Plaintiffs' claims against Defendants. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990) (noting that · any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists). Finally, Defendant Whitley concedes that he has flown to Texas twice, once "to meet with doctors regarding breast implant cases and once to review documents" that had been gathered by Plaintiffs. *See Whitley Aff.* ¶ 2. Because these visits center around the breast implant litigation that forms the basis for Plaintiffs' cooperative agreement with Defendants, the Court finds that such contacts strengthen Plaintiffs' claims that the contract at issue in this litigation created a long-term connection between Defendants and Texas.[3]

---

**3.** The Court, however, is less sanguine about asserting personal jurisdiction over Defendant Robert Cameron. Defendant Cameron alleges that he has never traveled to Texas for any reason; more importantly, Plaintiffs' poignant

arguments regarding the contractual obligations agreed to by the other individual Defendants do not appear to apply to Defendant Cameron. Defendant Cameron's name is not listed on any documents (at least on any of

Taken together, these contacts reveal that Defendants undertook purposeful actions in order to benefit from a business relationship in Texas with Texas residents. Moreover, because the alleged contracts envisioned Texas performance, the Court concludes that Defendants availed themselves of the privilege of conducting business in Texas and invoked the protections of Texas law, thereby meeting the requirements for specific jurisdiction under the first prong of *International Shoe* and its progeny.

## 2. Fair Play and Substantial Justice

The Court further concludes that the exercise of jurisdiction over Defendant would not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. To satisfy the Constitution, there must exist a sufficient relationship between the defendant and the forum state that it would be "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating the reasonableness issue, the Court considers the interests of the forum state, the judicial system's interest in efficient resolution, the plaintiff's interests in obtaining relief, and the shared interest of the several states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir.1987). "It is incumbent upon the defendants to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones,* 954 F.2d at 1068.

In this case, Texas clearly has an interest in adjudicating a dispute involving a Canadian law firm that enters into a contractual obligation in Texas with Texas attorneys for the representation of women injured from breast implant surgery. Plaintiff Michael Sydow is a Texas resident and Plaintiff Sydow & McDonald, L.L.P. is a Texas corporate entity; thus Texas has a strong interest in presiding over the dispute. And while it will be a burden on Defendants to litigate the action in Texas, it would likewise be a burden on Plaintiffs to prosecute the action in Canada. Moreover, in light of the fact that Defendants are highly sophisticated legal concerns that engage in multi-million dollar litigation in Canada and the United States, it is hard for the Court to find it too burdensome for Defendants to answer in a Texas forum for their alleged breach of a Texas contract that they actively solicited from a Texas law firm. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 ("[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957))).

Moreover, the "contract" giving rise to this suit also points to Texas as a reasonable forum for trial. Defendants hired Texas residents to perform work in Texas. Defendants even orchestrated Plaintiffs' actions in filing a suit in Harris County, Texas on behalf of Defendants' breast implant claimants. In addition, the agreements called for Plaintiffs to collect and store in their Texas offices important rec-

the documents submitted to the Court) showing that he entered into, performed under, or terminated the alleged contract with Plaintiffs. In fact, of all the documents reviewed by the Court, Defendant Cameron's name does not even appear on any Acheson & Co.

letterhead until May 26, 1998. Ultimately, the Court has no other evidence with which to evaluate the contacts Defendant Cameron has had with the Texas forum. As a result, Defendant Cameron's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED.**

ords for the bankruptcy proceeding—and certain Defendants traveled to Texas either to review these documents or to attend legal meetings and seminars regarding breast implant litigation. The Court finds it rather duplicitous for Defendants to first invoke the power and protection of the laws of Texas and then later reverse course and claim insufficient contacts with Texas when another party seeks relief from Defendants based on a violation of Texas contracts law. *See Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1030 (5th Cir.1983) (noting that when a contract provides no choice of law, the "place where contract was completed was relevant to the reasonable foreseeability that 'enforcement and protection of [defendant's] own rights under the contract might depend on the laws of Texas'" (quoting *Cousteau,* 495 F.2d at 497)). This type of gamesmanship is unacceptable. As a result, the Court rejects the notion that trial of this matter in Texas is a burden on two Canadian law firms and their attorneys, particularly if the facts ultimately reveal Defendants fraudulently induced Plaintiffs to enter into a Texas-based contract with Defendants. Given the nature of Defendants' contacts with Plaintiffs and the forum state, the Court finds that Defendants could reasonably anticipate being haled into Texas courts.

After careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over all but one of the Defendants in this action and that the exercise of jurisdiction would be consistent with Constitutional requirements. Accordingly, the Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants Acheson & Co., Deborah A. Acheon, Kevin W. Whitley, Connell Lightbody, Mark Steven, and Heather Donison are **DENIED,** but Defendant Robert W. Cameron's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED.**

### D. *Forum non Conveniens*

Defendants also seek dismissal of this action under the doctrine of *forum non conveniens.* The doctrine of *forum non conveniens* allows a court to decline to exercise its jurisdiction where it appears that, for the convenience of the parties and in the interests of justice, the action should be tried in another forum. The ultimate issue in a *forum non conveniens* analysis is where the case should be tried in order to best serve the convenience of the parties and the interests of justice. *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir.1986). Determining what location is convenient requires a balancing of a number of private and public interest factors, none of which is dispositive. *See Syndicate 420,* 796 F.2d at 827. The defendant, however, bears the burden of convincing the Court that dismissal of the action is warranted.

The first step in a *forum non conveniens* analysis involves a determination of whether there exists an adequate and available foreign forum. A foreign forum is available when the entire case and all of the parties can come within the jurisdiction of that forum; the forum is adequate if the parties will be treated fairly and will not be deprived of all remedies. *See id.* at 828–30. Here, Defendants contend the courts in British Columbia are available and appropriate forums. Plaintiffs do not strenuously challenge the availability or adequacy of a Canadian forum. Accordingly, the Court will presume that an adequate and available forum for this dispute exists in Canada.

If an adequate forum is available, the Court must then balance the public and private factors outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "The plaintiff's choice of forum is entitled to great weight in the balancing of factors, and unless the bal-

ance strongly favors the defendant[ ], the plaintiff's choice of forum should not be overturned." *Syndicate 420,* 796 F.2d at 830.

■■■■ The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability [sic] of a judgment if one is obtained.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843 (superseded by 42 U.S.C. § 1404(a)); *see Cowan v. Ford Motor Co.,* 713 F.2d 100, 103 (5th Cir.1983) ("[T]he doctrine of forum non conveniens, as set out in *Gilbert,* remains good law so long as the possible alternative forum is a state or foreign court"). The public factors relevant to a *forum non conveniens* analysis include

> the administrative difficulties caused by crowded dockets, the burden of imposing jury duty on citizens of a forum with no relation to the dispute, the local interest in having localized controversies decided in that locality, and the appropriateness of deciding diversity cases in the forum whose law provides the substantive rules of decision.

*Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1484 (S.D.Tex.1992), *aff'd,* 990 F.2d 1489 (5th Cir.1993); *see also Syndicate 420,* 796 F.2d at 831.

■■■■ Here, the private factors weigh in favor of retaining the action. The evidence and witnesses in this case will likely be scattered between Canada and Texas. Thus, a trial in either location will present certain difficulties in obtaining the attendance of witness, and necessarily will be burdensome and problematic to one of the

parties. However, the doctrine of *forum non conveniens* should not be invoked simply to shift the inconvenience from one party to another. The Court therefore must evaluate the nature of the underlying action.

The action pending before the Court ultimately centers around the existence of a contract. Thus, all of the relevant witnesses testifying as to whether a viable contract is in effect likely will be parties, employee's of Plaintiffs (who live in Texas), or employee's of Defendants (who live in Canada). Because all of the Canadian witnesses will be either Defendants or employees of Defendants, the Court is confident that Defendants will be able to ensure their attendance at trial or otherwise present their testimony. With regard to all of Defendant's Canadian employees, the Court reminds all parties that it "vigorously exercises its authority under FED. R. EVID. 403 and 611(a) to ensure that each witness's testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum[,]" thereby restricting the time that the witnesses are absent from their jobs to an "absolute minimum." *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1397 (1992). Moreover, the Court liberally construes FED. R. CIV. P. 32 to allow depositions wherever convenient. In the end, even if Defendants had contended it would be burdensome to secure the presence of Canadian witnesses if the trial were conducted in Texas, they have provided this Court with no evidence to support this allegation.

The Court also recognizes that Plaintiffs' proof regarding the existence of the contract lies in the correspondence between Plaintiffs and Defendants—all of which are in Plaintiffs' possession. Therefore, the most important sources of written proof regarding the alleged contract are located in Texas. This certainly favors Texas as the more appropriate forum to resolve the dispute. Finally, because Defendants originally sought out Plaintiffs to initiate a

suit and to perform other legal work in Texas, the Court finds it rather disingenuous for Defendants to now say that Texas is inconvenient to resolve claims that grow out of Defendants' alleged contracts with Plaintiffs.

It therefore appears that conducting the trial in the Southern District of Texas will give both parties relatively easy access to more evidence and witnesses than would a trial in Canada, and will minimize the expenses to the parties. Accordingly, the Court concludes that the private factors weigh in favor of maintaining the action in the Southern District of Texas, which will provide the most expeditious and inexpensive resolution of the case.

The public factors likewise weigh in favor of maintaining the case in the Southern District of Texas. While this Court's docket is extremely crowded, the case is scheduled for trial in July 2000; dismissing the case would result in a substantial delay of its resolution. More importantly, this case is brought by a Texas law firm headquartered in nearby Houston. The State of Texas has a keen interest in the disposition of cases involving one of its own citizens or corporate entities, a point completely overlooked by Defendants. To the extent that the laws of British Columbia may govern the dispute, this fact alone does not outweigh the other factors, which support keeping the case in the Southern District of Texas. While the Court firmly believes that Texas law will likely govern this dispute, that issue need not be resolved at this time. Regardless of choice of law considerations, the laws of British Columbia should be substantially similar to the laws of the United States, and the Court is confident in its ability to properly apply whatever law is determined to be governing.

Therefore, after a careful consideration of both the public and private factors, the Court concludes that, in order to best serve the convenience of the parties and the interests of justice, Plaintiffs' action should not be dismissed. While trial in Texas will be somewhat burdensome to Defendants, a trial in Canada would be equally burdensome to Plaintiffs, and would further no significant public or private interest. Accordingly, Defendants' Motion to Dismiss on Grounds of *Forum Non Conveniens* is hereby **DENIED**.

### III. MOTION FOR MORE DEFINITE STATEMENT

Finally, Defendants argue that Plaintiffs' complaint fails to satisfy the heightened pleading standard applicable to fraud cases. *See* FED R. CIV. P. 9(b). The issue is moot, however, because on December 2, 1999 Plaintiffs filed a First Amended Complaint that properly alleges the nature of the fraud and offers a "brief sketch of how [the] fraudulent scheme operated." *Askanase v. Fatjo,* 148 F.R.D. 570, 574 (S.D.Tex.1993). Consequently, Defendants' Motion for More Definite Statement is **DENIED**.

### IV. CONCLUSION

After trudging through the arguments, the Court finds it has subject matter jurisdiction over Plaintiffs' claims, as well as personal jurisdiction over all Defendants except Robert W. Cameron. The Court also concludes that Defendants fail to demonstrate adequate grounds for dismissal on the grounds of *Forum Non Conveniens.* Finally, Plaintiffs' First Amended Complaint renders Defendants' Motion for More Definite Statement moot. Accordingly, the Motions to Dismiss and Motions for More Definite Statement filed by Defendants Acheson & Company, Deborah A. Acheson, Kevin W. Whitley, Connell Lightbody, Mark Steven, and Heather Donison are **DENIED**. However, Robert W. Cameron's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at

the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *PARTIAL FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, Defendant Robert W. Cameron's Motion for Dismissal is **GRANTED** and such claims are **DISMISSED WITHOUT PREJUDICE.** The parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A PARTIAL FINAL JUDGMENT.**

**IT IS SO ORDERED.**